[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 10, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15134
Non-Argument Calendar

_____

D. C. Docket No. 05-23304-CV-PCH

ALLAN L. GREENBERG,

Plaintiff-Appellant,

versus

BELLSOUTH TELECOMMUNICATIONS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 10, 2007)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Allan Greenberg appeals the district court's grant of summary judgment in favor of his former employer, defendant-appellee BellSouth, in his employment discrimination lawsuit, which Greenberg filed pursuant to the ADA, 42 U.S.C. § 12101, et. seq., and its Florida analogue, Fla. Stat. § 760.10, et. seq.[1] On appeal, Greenberg argues that there are genuine issues of fact as to (1) whether he is disabled under the ADA and (2) whether he was terminated because of such a disability. We AFFIRM.

## I. BACKGROUND

Greenberg, who is obese and suffers from other medical conditions, sued his former employer, BellSouth, alleging that BellSouth terminated him on the basis of a disability in violation of the ADA and its Florida law analogue, the Florida Civil Rights Act ("FCRA"). BellSouth denied that it had unlawfully terminated Greenberg.

A. Greenberg's Employment with BellSouth

Fernando Carbot was Greenberg's supervisor at BellSouth. Carbot's team is

---

[1] Greenberg also sued under the Rehabilitation Act, which only covers agencies of the federal government and employers receiving federal contracts over $10,000 or federal financial assistance. See 29 U.S.C. § 793(a). As the district court pointed out, Greenberg did not allege that BellSouth received federal financial assistance. Therefore, the district court properly granted summary judgment as to Greenberg's Rehabilitation Act claim. Greenberg does not dispute the district court's disposition of that claim on appeal. Accordingly, this claim has been abandoned. See United States v. Ford, 270 F.3d 1346, 1347 (11th Cir. 2001) (per curiam) (citations omitted) (stating that parties abandon issues and contentions when they fail to raise them in their appellate briefs).

responsible for the installation and maintenance of telephone service. Under BellSouth's safe load limit policy, employees in jobs that required climbing could weigh no more than the safe load limit of the equipment used in their work groups. The manufacturers' safe load limit for the ladders, gaffs, bucket trucks, and safety belts used by Carbot's technicians is 300 pounds. The tool belt and tools used by each technician weighed 25 pounds. Consequently, Carbot's employees could weigh no more than 275 pounds. Because Greenberg's weight exceeded the safe load limit, Carbot "would hand-pick Mr. Greenberg's job assignments to make sure he did not get any assignments that would require him to climb."

According to Carbot, BellSouth hired another company, Concorde, in 2004 to track the weight of employees governed by the safe load limit policy. Carbot informed Greenberg that, unlike in the past, BellSouth's safe load limit policy would now be uniformly applied and that he would have to lose weight. In March 2004, Carbot gave Greenberg a weight loss timetable, under which Greenberg was required to lose 50 pounds over a period of 25 weeks in order to comply with the safe load limit. In September 2004, however, Concorde informed Carbot that Greenberg had not lost the required weight.

Carbot asserted that Greenberg was, at that point, given 60 days to find another job, and that Carbot gave Greenberg the contact information for Tom

VanValkenburg, who worked in BellSouth's Human Resources Department, could help place Greenberg in another job within the company. After Greenberg failed to find another job within the specified time, BellSouth terminated him on 15 February 2005.

Greenberg suffers from "diabetes, hypertension, hypothyroidism and a variety of disorders that affect his endocrinology and that such physiological disorders cause him to be overweight and prohibit him from losing weight." R1-28, Exh. 3 at 14. He has stated that his diabetes is "[s]emi under control," and explained that it is "less than real bad but it isn't to the [blood sugar] numbers where they want you to be, where a normal person's [sic] supposed to be." R1-28, Exh. 1 at 15. He testified that he no longer exercises as much because he is "paranoid" and is concerned that his blood sugar will fall. Id. at 19. He also indicated that his diabetes prevents him from caring for himself because of concerns that his blood sugar might get very low.

As to his hypothyroidism, Greenberg testified that his condition causes him to have "dryness in the mouth sometimes" and makes him bigger and slower. Id. at 29, 34. He also stated that his thyroid condition: (1) affects his mental states; (2) causes him to sweat "like crazy"; and (3) causes his extremities to grow large. Id. at 30, 41-42. He said that hypertension causes him to get light-headed when he

4

stands up after being seated.

Greenberg testified that at one point during the 1990s he attempted to lose weight but, after a period of success, found that he was "really messed up" as a result. Id. at 26-27. He explained, "I couldn't sleep very much, I couldn't walk very much, I couldn't do anything very much. I had stinging in my hands and in my feet, in my extremities. I was real dull. At that time my mind was really messed up. . . . I probably should have stayed home." Id. He also stated that he was diagnosed as being anemic. Following a later dieting attempt, Greenberg testified that he experienced a fainting spell, which led to hospitalization.

Greenberg did not recall any derogatory comments by BellSouth managers about his weight. Nor had he heard managers use the terms "disabled" or "disability" to describe him. Greenberg testified, though, that because limitations prevented him from doing the same work as his co-workers did, he felt isolated. He recounted that he occasionally felt light-headed while on the job and had to take a break "to get a little something in [his] system." Id. at 47. He testified that, in one instance, after a storm, he refused to scale a roof, worrying about whether roofs could support his weight and whether he might become light-headed while aloft.

Greenberg asserted that, if he had been given a stronger ladder, he could

5

have climbed it. Greenberg testified that he informed BellSouth that a stronger ladder could accommodate his weight. When he requested that BellSouth purchase these ladders, however, he received no response. Greenberg testified that he was unsure if he could return to his entry level work as a lineman because the work was rigorous.

Greenberg stated that, toward the end of his career, he stopped working overtime because he could not stay out and miss a meal. He stated that, when he received the notification to lose weight, he did not think that he would be able to do it because of his past dieting difficulties.

Greenberg testified that he can bathe and dress himself. He stated that he does not work outside as much as before and stated, ". . . I don't want to work as hard, I don't want to lift as heavy a things as I used to try lifting." Id. at 44. He stated that he was physically able to walk but was "apprehensive about distances." Id. at 51.

He testified that he contacted BellSouth's human resources department and that they had informed him of a possible job answering phones in Pensacola, Florida. Greenberg concluded that he was not qualified for that job, because he neither answered phones nor typed. When asked if he had an interest in any position other than his previous position, he also responded in the negative.

6

B. Medical Evidence

Dr. Juan Mantilla, Greenberg's primary care physician, first treated Greenberg when Greenberg visited the emergency room following his fainting spell in July 2003. Mantilla stated that he could not conclusively determine why Greenberg had fainted. He stated that the fainting spell Greenberg had experienced could have been related to the weight loss that preceded it. Mantilla testified that he had consistently urged Greenberg to diet and exercise and knew of no medical condition that would prevent Greenberg from dieting and exercising. He added that Greenberg was physically active and was not limited in his ability to engage in normal activities. He testified that there was no limitation on Greenberg's activities associated with his diabetes and that his thyroid condition and hypertension were controlled by medication. Mantilla further stated that he did not know whether obesity or Greenberg's other health problems came first. He noted that Greenberg's high triglyceride level would not affect his ability to undertake ordinary life activities.

Dr. Robert Marema, whose practice involves medical and surgical weight loss, testified on behalf of BellSouth. Dr. Marema did not conduct a physical examination of Greenberg. Dr. Marema indicated that, in addition to Greenberg's other health problems, Greenberg likely suffered from undiagnosed sleep apnea,

which would place him at an increased risk when operating machinery. Dr. Marema explained that he did not give Greenberg health recommendations because he was not one of Greenberg's treating physicians. He did not identify any activities that, if he were advising Greenberg, he would categorically tell Greenberg were medically unsafe. Rather, Dr. Marema stated that he would have discussed with Greenberg the need for lifestyle changes and the need to be aware of his risk factors. Dr. Marema stated that he would not have told Greenberg that exercise was a health risk that should be avoided.

As part of his assessment, Dr. Marema administered the Beck's Depression Index II ("BDI"), an assessment for depression, and an SF-36, which assesses quality of life. Greenberg's SF-36 score "was significant for multiple difficulties with routine activities indicating a moderate to severe level of impairment in [activities of daily living]." R1-28, Exh. 5. Dr. Marema testified that the BDI indicated that Greenberg suffered from moderate depression, but he did not state whether Greenberg's depression prevented him from engaging in ordinary life activities.

Dr. Marema's report indicated that Greenberg's medications were "modestly effective in controlling [his] obesity related co-morbidities but also have secondary effects of contributing to the condition of obesity as weight gain is a known side

8

effect of these meds." Id. He stated:

> [Greenberg's] prior commitment to medical weight loss is demonstrable by his loss of the predicted ten to twenty per cent excess weight. As soon as he was unable to continue on the program, he rapidly regained the lost weight. Morbidly obese individuals who have failed one or more attempts at medically supervised weight loss have a less than one per cent chance of success with subsequent non-surgical programs.

> Mr. Greenberg qualifies as a morbidly obese person who is disabled by the presence of multiple co-morbities which include undiagnosed sleep apnea, hypertension, hypercholesterolemia, hyperlipidemia and diabetes Type II. He also suffers from moderate depression and impairment of activities of daily living as evaluated by the SF-36. Major system impairment includes respiratory, cardiovascular, endocrine, and musculoskeletal.

Id. Dr. Marema testified that the portion of his report that discussed reduced quality of life or reduced ability to do certain activities was based on the BDI and the SF-36 scores along with "the additional things that [Greenberg] was relating to in terms of being very tired, being – having difficulty with moving around at this point." Id. at 33. Based on Greenberg's account of his activities of daily living, Dr. Marema gave Greenberg the SF-36 "to try to put some quantification to his impairment." Id.

C. The District Court Proceedings

After discovery, BellSouth moved for summary judgment, arguing that Greenberg had not established the required elements of a prima facie case of

9

disability discrimination under the ADA or Florida law. BellSouth asserted that Greenberg: (1) could not identify an impairment that substantially limited a major life activity; (2) did not have a record of disability because the impairment he identified did not substantially limit a major life activity; (3) could not show that BellSouth considered him to be disabled; and (4) could not show that he was fired because of a disability. BellSouth also argued that obesity could not be a disability unless it had a physiological cause and that Greenberg had not made such a showing. BellSouth asserted that no physician had restricted Greenberg's physical activities, that his hypertension, diabetes, and hypothyroidism were controlled by medication, that he did not have a physical problem with walking, and that he could bathe himself, dress himself, and do housework.

The district court granted summary judgment on Greenberg's claims under the ADA and Florida law, finding, first, that Greenberg could not show that he was substantially limited in a major life activity. Because it found that Greenberg could not establish a substantial limitation, the district court found that it did not need to resolve the issue of whether Greenberg suffered from an impairment. The district court observed that the ADA guidelines suggest that obesity is rarely considered a disabling impairment and some courts have held that obesity must result from a physiological condition in order to be considered a disability. See 29 C.F.R. §

1630.2.

The district court also found that Dr. Mantilla had testified that the cause of Greenberg's fainting spell was unknown while Dr. Marema had testified that Greenberg became ill because of dieting. Additionally, the district court observed that "Dr. Marema admitted in his deposition that his analysis regarding the effects of [Greenberg's] previous dieting efforts were based on what [Greenberg] reported to Dr. Marema, and that Dr. Marema did not, in fact, know what caused the fainting episode."[2] R12-55 at 3 n. 5.

The district court also found that Greenberg could not show that he was disabled based on a record of impairment. Furthermore, the district court found that Greenberg was not regarded as having a disability, noting that Greenberg had "not made any allegations, nor ha[d] he put forth any evidence suggesting that [BellSouth] perceived [him] as substantially limited in a broad class of jobs." Id. at 16. Nor, the district court found, had Greenberg set forth sufficient evidence to show that he was terminated due to a disability. Accordingly, the court granted summary judgment in favor of BellSouth.

---

[2]The district court did not consider Greenberg's assertions that he suffered from sleep apnea, because he had not presented evidence showing that he suffered from the condition; nor had he claimed he was discriminated against because of it.

11

## II. DISCUSSION

On appeal, Greenberg contends that his own testimony and that of his expert witness, Dr. Robert Marema, created genuine issues of material fact as to whether he is disabled. He argues that he failed to lose weight due to medical complications, and that the evidence supported a conclusion that he was disabled under the ADA. He contends that the district court failed to view the evidence and the factual inferences in the light most favorable to him as the non-moving party and impermissibly weighed the evidence.

We review <u>de novo</u> the district court's grant of summary judgment. <u>Burton v. Tampa Hous. Auth.</u>, 271 F.3d 1274, 1276-77 (11th Cir. 2001) (citation omitted). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "There is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." <u>Waddell v. Valley Forge Dental Assocs., Inc.</u>, 276 F.3d 1275, 1279 (11th Cir. 2001) (citation omitted). We view "the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." <u>Burton v. City of Belle Glade</u>, 178

12

F.3d 1175, 1187 (11th Cir. 1999).

"In order to establish a prima facie case of discrimination under the ADA, [a plaintiff] must demonstrate that [he] (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of [his] disability." Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000) (citation omitted). This standard derives from the ADA's language, stating that "no [employer] shall discriminate against a qualified individual with a disability because of the disability of such an individual." 42 USC 12112(a). Claims raised under the Florida law are analyzed under the same framework as the ADA. Chanda v. Engelhard/ICC, 234 F.3d 1219, 1221 (11th Cir. 2000).

For the first element of an ADA claim, a plaintiff qualifies as disabled under the ADA if he has "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Major life activities are further defined by the Equal Employment Opportunity Commission ("EEOC") as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); Cash, 231 F.3d at 1305. "When the major life activity under consideration is that of working, the statutory phrase

13

'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. 471, 491, 119 S. Ct. 2139, 2151 (1999). "A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently 'substantially limits' a major life activity." Id. at 482-83, S. Ct. at 2146-47. Moreover, the regulations provide that, "except in rare circumstances, obesity is not considered a disabling impairment." 29 C.F.R. Pt. 1630, App., § 1630.2(j).

"[T]he ADA requires those claiming the Act's protection... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." Toyota Motor Mfg., Kentucky, Inc. v. Williams, 534 U.S. 184, 198, 119 S. Ct. 681, 691-92 (2002) (quotations omitted). The Supreme Court has held that "to be substantially limited in performing manual tasks, an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of *central importance* to most people's daily lives. The impairment's impact must also be permanent or long term." Id. at 198, 122 S. Ct. at 691) (emphasis added) (citation omitted).

The district court concluded that Greenberg had not provided evidence that

he is disabled under these definitions. We agree. Greenberg has not shown that he has an impairment that substantially limits him in one or more major life activities. First, a person is "substantially limited" in a "major life activity" if he cannot care for himself; on this point, the evidence indicates that Greenberg bathed and dressed himself and could perform household chores. Also, a person qualifies as substantially limited in a major life activity if he is "at a minimum . . . unable to work in a broad class of jobs." Sutton v. United Air Lines, Inc., 527 U.S. at 491, 119 S.Ct. at 2151. Greenberg presented no evidence to support such a claim.

In sum, Greenberg presented no evidence that he has a record of impairment or has been regarded as impaired. Nor does the record indicate that BellSouth treated Greenberg as impaired or disabled.

Greenberg's appellate brief and reply brief allege that there is conflicting evidence about why Greenberg could not lose weight. This is immaterial to the statutory definition of disability. "Conflicting" evidence on the question of weight loss does not create a genuine issue of material fact as to whether Greenberg qualifies as disabled under the ADA. The statutory language requires that he demonstrate: "(A) a physical or mental impairment that substantially limits one or more of the major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Greenberg

15

cannot establish that he is disabled under the ADA and thus cannot proceed with his claims. Accordingly, we need not consider the other two prongs of the ADA test for disability discrimination.

### III. CONCLUSION

Finding no genuine issue of material fact as to whether Greenberg is disabled and, as a result, finding none as to whether Greenberg was terminated due to a disability, we AFFIRM the district court's grant of summary judgment.

**AFFIRMED.**