[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 23, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12774
Non-Argument Calendar

_____

D. C. Docket No. 05-00033-CV-6

DAVID HARRIS,

Plaintiff,

JOHN L. PURSER,

Plaintiff-Appellant,

versus

JAMES E. DONALD,
WARDEN HUGH SMITH,
VICTOR GUY,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

**(January 23, 2008)**

Before TJOFLAT, BLACK and WILSON, Circuit Judges.

PER CURIAM:

John L. Purser, a state prisoner proceeding *pro se*, appeals from the district court's order granting summary judgment in favor of the defendants in his action brought pursuant to 42 U.S.C. § 1983, alleging that the defendants were deliberately indifferent to his medical needs by knowingly exposing him to friable asbestos, in violation of the Eighth Amendment.

Upon review of the record and the parties' briefs, we discern no reversible error and AFFIRM.

## I. BACKGROUND

Purser, a prisoner at the Georgia State Prison ("GSP") filed a complaint in federal district court, pursuant to 42 U.S.C. § 1983, seeking monetary and injunctive relief against defendants James Donald, Commissioner of the Georgia State Department of Corrections; Hugh Smith, Warden at GSP; and Victor Guy, engineer at GSP (collectively, the "defendants"). Purser filed an amended complaint alleging that the defendants were deliberately indifferent to his health and medical needs by knowingly and willfully exposing him to friable asbestos in violation of the Eighth Amendment.[1] Specifically, Purser alleged that the

---

[1] The original complaint was jointly filed by Purser and David Harris, a fellow prisoner. Harris dropped out of the case when he failed to pay the required court costs. Purser also alleged

infrastructure and ventilation system in the M building, where his cell is located, was contaminated with friable asbestos, the exposure of which caused irreparable harm to his current and future health. Purser alleged that Donald, as the Commissioner of GSP, and Smith, as the warden, failed to respond to Purser's grievances notifying them of his exposure to asbestos and requesting an asbestos-free environment. Purser alleged that Guy, as the engineer at GSP, was responsible for investigating reports of asbestos exposure and overseeing the removal of such material.

The defendants filed a motion for summary judgment, arguing, *inter alia*, that Purser could not satisfy the objective prong of his deliberate indifference claim because Purser's allegations that friable asbestos was released into the ventilation system were not supported by fact. The defendants cited Guy's affidavit and inspection report, which stated that he visually inspected the hallway between L and M buildings in January 2004, upon Smith's request, and found no suspect materials in the living areas, although he thought that there may have been asbestos in the hallway's pipe insulation. Guy further averred that Michael Simmons, the

---

in the original complaint that the defendants' actions and omissions constituted cruel and unusual punishment under the Georgia Constitution and torture under the United Nations Convention Against Torture ("CAT"). At no other point in the litigation, including his brief on appeal, did Purser mention or renew his claims under the Georgia Constitution or CAT. Thus, he has abandoned these issues on appeal. *See Mathews v. Crosby*, 480 F.3d 1265, 1268, n.3 (11th Cir. 2007), *cert. denied*, — S.Ct. — , 76 U.S.L.W. 3050, 2008 WL 59316 (Jan. 7, 2008).

Director of Engineering and Construction Services for the Georgia Department of Corrections, conducted an Asbestos Hazardous Emergency Response Act (AHERA) inspection of the L and M buildings and found up to 10% of moderate asbestos damage to hallway pipes between the L and M buildings. Guy and his crew immediately repaired those pipes. Guy also stated that in October 2005, representatives from Schweiger and Associates informed Simmons that the air samples from the L and M buildings indicated a minimal level of airborne asbestos in those buildings. Guy averred that no further repairs were made to the pipes, however, because the pipes in question transported air out of the prison, rather than into the inmates' cells.

Based on the results of Simmons's AHERA inspection, Schweiger's report, Guy's affidavit, and Purser's statement that he did not have any evidence to dispute the results of Schweiger's test, the defendants argued that Purser could not satisfy the objective prong of his claim because he could not demonstrate that his minimal exposure to asbestos posed an unreasonable risk of serious damage to his future health.

Purser responded to the defendants' motion with his own affidavit reiterating the facts underlying his claim for relief and an affidavit from David Harris, a fellow inmate, who stated that for the last eleven years, he had witnessed the

4

bursting and breaking of pipes, walls, ceilings, and floors in the L and M building that have allowed friable asbestos to be released into the cells through the ventilation system. Purser also attached prison grievances which complained of an exposure to friable asbestos and a memorandum written by Guy in January 2004, reporting that after asbestos was discovered above the ceiling in the prison library, the library was sealed off. Purser included a January 11, 2005 radiology examination (concluding that Purser had "calcifications secondary to old granulomatous disease. The chest is otherwise unremarkable." R2, Exh. I), and three medical forms from May, June, and July 2004, none of which diagnosed Purser with an asbestos-related disease.

The district court adopted the initial report and recommendation denying the defendants' motion for summary judgement, but referred the case back to the magistrate judge so that, upon the defendants' renewed motion, the magistrate could explore the potentially dispositive argument that Purser suffered no medical harm and was unlikely to suffer any harm in the future.

The defendants renewed their motion and submitted a written analysis and report of expert witness Dr. Amy R. Blanchard. Dr. Blanchard opined, "with a reasonable degree of medical certainty that the likelihood that inmate Purser will develop in the future an asbestos-related lung disease is less than 1%." R2-76,

Analysis and Report of Dr. Amy R. Blanchard. Dr. Blanchard continued:

> I based my opinions upon [Purser's] medical records as a whole, including the fact that (1) his CXR of January 13, 2005 did not show any interstitial changes or pleural calcifications or plaques, which one would expect in asbestos-related lung disease (2) his PFT of May 24, 2005 was normal and (3) his medical records did not show any chronic cough, progressive shortness of breath, or the presence of crackles on a lung evidence. There is no evidence in his medical records that inmate Purser coughed up blood.

*Id.* The defendants also submitted Purser's institutional medical file upon which Dr. Blanchard relied in her report. They argued that the undisputed evidence showed that Purser was not currently suffering from any asbestos-related systems, and that because he was not exposed to moderate or severe levels of asbestos for a number of years, the likelihood of Purser developing an asbestos-related lung disease was less than 1%.

Purser responded to the defendants' renewed motion with his own affidavit, stating, *inter alia*, that he was diagnosed with asbestos exposure on May 25, 2005, and that Dr. Blanchard's report was biased and inadmissible because she never personally examined Purser and was being paid for her services.

After conducting a *de novo* review of the record and fully considering Purser's objections, the district court adopted the magistrate's report and recommendation and granted defendants' motion for summary judgment, concluding that the evidence submitted by Purser failed to create any genuine issue

6

of material fact with respect to a present asbestos-related injury.

Purser raises the following five arguments on appeal: (1) the court applied an improper legal standard by requiring Purser to prove that he had been exposed to dangerous quantities of friable asbestos for a prolonged period of time; (2) the court erred by considering the report and affidavit of Dr. Amy Blanchard; (3) the court erred by considering Purser's institutional medical records; (4) the court erred by resolving factual disputes in the defendants' favor at the summary judgment stage; and (5) the court erred by not discussing Purser's assertion that the prison was evacuated due to asbestos-related contamination.

## II. STANDARD OF REVIEW

We review the district court's interpretation of the law *de novo*, "premised on the understanding that application of an improper legal standard is never within the district court's discretion." *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir. 2002) (internal quotation marks and alteration omitted). We review the admissibility of evidence for abuse of discretion. *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1249 (11th Cir. 2007). Under this standard, "we will leave undisturbed a district court's ruling unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.* (internal quotation marks omitted). Evidence that is

7

inadmissible at trial cannot be used to avoid summary judgment. *Id.*

We review de novo the district court's grant of summary judgment. *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(c)). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Id.* At the summary judgment stage, we view the evidence, and all factual inferences therefrom, in the light most favorable to the party opposing the motion. *Id.*

### III.  DISCUSSION

A.  *Whether the Court Applied an Improper Legal Standard*

Purser argues that the court misapplied the Supreme Court's decision in *Helling v. McKinney*, 509 U.S. 25, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993), by requiring him to prove that he was exposed to certain high levels of asbestos for a prolonged period of time.

In *Estelle v. Gamble*, the Supreme Court held that deliberate indifference to

8

a prisoner's medical needs stated a cognizable claim under the Eighth Amendment. 429 U.S. 97, 103–05, 97 S. Ct. 285, 290–91, 50 L. Ed. 2d 251 (1976). In *Helling*, the Supreme Court held that prison officials' deliberate indifference to a condition of confinement that was very likely to cause serious medical illness in the future was a violation of the Eighth Amendment. *Helling*, 509 U.S. at 31–34, 113 S. Ct. at 2480–81. In the context of an inmate's exposure to environmental tobacco smoke ("ETS"), the Court held that the inmate would have to satisfy both a subjective and objective element of his deliberate indifference claim. *Id.* at 35, 113 S. Ct. at 2481–82. The Court found that for plaintiff to demonstrate that he is being exposed to unreasonably high levels of ETS, and therefore meet the objective element of a deliberate indifference claim, an inmate must show not only "a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to [asbestos]," but also that "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency." *Id.* at 36, 113 S. Ct. at 2482.

Contrary to Purser's argument, the district court did not interpret *Helling* itself to require a prolonged exposure to certain quantities of asbestos, but rather relied on the medical report of Dr. Blanchard to find that Purser would have to

9

make such a showing in order satisfy the standard in *Helling* that it was very likely that he would suffer from an asbestos-related illness in the future. Thus, the court did not misapply *Helling* by requiring Purser to show a prolonged exposure to certain quantities of asbestos in order to satisfy the objective element of his deliberate indifference claim.

B.      *Whether the Court Erred by Considering Dr. Blanchard's Report*

Purser argues that the court violated Federal Rule of Evidence 703 by considering Dr. Blanchard's opinion that Purser was unlikely to suffer from an asbestos-related injury in the future. Rule 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.

Fed. R. Evid. 703.

Dr. Blanchard based her opinion on her finding that there was no evidence in Purser's medical records to suggest that he was exposed to moderate or severe levels of asbestos for a prolonged period of time. Purser fails to explain how the court's consideration of Dr. Blanchard's report runs afoul of Rule 703. In any event, Dr. Blanchard's finding is supported by three uncontradicted asbestos inspections in the record concluding that there were not dangerous quantities of

10

friable asbestos in the Purser's living area. Thus, the district court did not abuse its discretion by relying on Dr. Blanchard's report.

C.      *Whether the Court Erred by Considering Purser's Medical Records*

Purser argues that the court erred by considering Purser's institutional medical records because these documents were created by the defendants' agents who are potentially subject to civil rights liability. Purser cites no binding authority establishing this rule of law. In any event, a review of the record reveals that Purser's institutional medical record was not compiled by any of the defendants in the present action or by officials alleged to have committed any wrongdoing. Thus, the court did not abuse its discretion by considering Purser's institutional medical records.

D.      *Whether the Court Erred by Resolving Factual Disputes in the Defendants' Favor at the Summary Judgment Stage*

Purser first argues that the court impermissibly resolved a factual dispute regarding whether he was suffering from a current asbestos-related injury. He concedes elsewhere in his brief, however, that he is not suffering from such an injury. Furthermore, Purser's medical records confirm that he was never diagnosed with an asbestos-related injury. Purser also argues that the court impermissibly resolved factual disputes regarding whether he suffered from prolonged exposure to dangerous levels of asbestos, and therefore, whether he was

11

likely to suffer from an asbestos-related injury in the future. The record contains no evidence that Purser was subjected to prolonged exposure to dangerous levels of asbestos. Indeed, the record contains three inspection reports, all concluding that the levels of asbestos in the Purser's living area were not dangerous. Thus, the district court did not err in finding that there was no genuine issue of material fact with respect to whether Purser was suffering a current asbestos-related illness and whether he was likely to suffer from such an illness in the future. Because there was no genuine issue of material fact on these issues, the defendants were entitled to judgment as a matter of law.

E.     *Whether the Court Erred by Not Discussing the Alleged Evacuation*

In his objection to the magistrate's report, Purser asserted for the first time that the prison had been evacuated in early 2007 due to asbestos contamination. He argued that the district court erred by not discussing this assertion or seeking out additional evidence on this point. Purser, however, did not submit any evidence to support this assertion. Furthermore, even if this assertion was true, it would not prove that Purser was exposed to dangerous levels of friable asbestos for a prolonged period of time. Thus, the district court did not err by refusing to discuss or seek out evidence regarding Purser's unsupported assertion.

## IV.  CONCLUSION

For foregoing reasons, we affirm the district court's grant of summary judgment in favor of the defendants.

**AFFIRMED.**