[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 27, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15386
Non-Argument Calendar
_____

D. C. Docket No. 06-01756-CV-ORL-31-DAB

DEBORAH DAVIS-DIETZ,

Plaintiff-Appellant,

versus

SEARS, ROEBUCK AND CO.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 27, 2008)**

Before ANDERSON, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Deborah Davis-Dietz ("Davis-Dietz") appeals the district court's entry of summary judgment in favor of Sears, Roebuck and Co. ("Sears") on her claims of discrimination under Title VII, the Florida Civil Rights Act ("FCRA"), the Americans with Disabilities Act ("ADA"), and the Family and Medical Leave Act ("FMLA").

## Background

Davis-Dietz was employed at the Sears store in Melbourne, Florida as a manager. Sometimes her role was referred to as a "Unit Manager." The Associate Handbook[1] states

> Associates are required to report to the unit manager within five (5) days of any felony or misdemeanor arrest and/or conviction. To the extent permitted by law, a determination will be made as to whether or not continued employment poses an unacceptable risk to Sears' customers, associates, and/or assets. Failure to report an arrest and/or conviction within five (5) days may result in disciplinary action, up to and including termination.

Davis-Dietz had been arrested twice for DUI—once in October 2004 and once in July 2005—and did not report either arrest within five days of being arrested. According to Sears, the policy in the Associate Handbook applied to managers as well.

Davis-Dietz contacted her supervisor, Lynette Swinski, in April of 2005

---

[1] "Associates" are ostensibly the workers on the sales floor—beneath the "Unit Manager" in the Sears hierarchy.

2

about taking leave under the FMLA so she could attend an inpatient treatment program for alcoholism. Swinski told Davis-Dietz to "get the paperwork done . . . and . . . be in touch" and Sears approved Davis-Dietz's request. She then went on leave around April 23, 2005 and was in rehabilitation for a total of eleven weeks.

Around July 6, 2005, Davis-Dietz left a message on Swinski's answering machine saying that she was going to be discharged on July 9th, and wanted to return to work on the following day. At some point thereafter, perhaps during the subsequent return call, the two discussed Davis-Dietz's need to attend "aftercare"—daily one-hour Alcoholics Anonymous ("AA") meetings. She returned to work on July 10, 2005, and provided Swinski with a written work schedule, as employees "worked out [their] own schedule in the store."

On July 14, 2005, Swinski and Warren McCurry—another Sears manager—met with Davis-Dietz. During the meeting, Swinski advised that she and McCurry wanted to discuss Davis-Dietz's schedule and "how things [were] going to be going forward." According to Davis-Dietz, Swinski made clear that she wanted copies of Davis-Dietz's work schedule and a release showing that she could be at work. Swinski also told Davis-Dietz that she needed to work her scheduled hours, provide a schedule on a weekly basis, and keep Swinski apprized of when she was not in the store in the event of an emergency. Davis-Dietz was

also issued a warning, although the significance and purpose of that warning is not entirely clear.

Swinski informed Davis-Dietz that she needed to be flexible as far as scheduling was concerned because Sears might wish to change her schedule. Davis-Dietz, in turn, told Swinski that Sears needed to be flexible as well, given that she had to attend follow-up AA meetings. Davis-Dietz also told Swinski that she needed to leave early every Thursday for these meetings, and Swinski responded, "[T]ake the days you need to take and do what you need to do, but I need to be kept abreast."

At some point during the July 14, 2005 meeting, Davis-Dietz indicated that she needed to leave work to attend one of her meetings, and Swinski permitted her to do so, even though she was scheduled to work that afternoon. On the way to her meeting, Davis-Dietz stopped at a convenience store and purchased two "little wines that come in the little screw tops." She drank one of the bottles, and then began driving to her meeting but had a tire blowout along the way. A police officer later stopped to assist her and eventually asked her to take a breathalyzer test. She refused and was arrested for DUI.

After receiving the warning but before she was terminated, Davis-Dietz called a Sears hotline to complain that McCurry and Swinski were not working

4

with her, and were "completely not compassionate and couldn't have cared less" that she needed to attend appointments. She explained that she wanted this documented because she "had this gut feeling that things weren't going right," and that McCurry and Swinski were "angry at [her] for having . . . been in the hospital, and angry at [her] for [her] alcoholism."

Around July 24, 2005, Davis-Dietz took a 10-day summer vacation, as she did every year. On August 9, 2005, after Davis-Dietz returned from vacation, Swinski and McCurry arrived unannounced to the store in which Davis-Dietz worked. Swinski asked Davis-Dietz whether she had ever been arrested, and Davis-Dietz admitted that she had been arrested in October 2004 and in July 2005. Swinski questioned Davis-Dietz over whether she knew that she was required to report an arrest to her supervisor within five days of the arrest, and Davis-Dietz responded that she did not, and her arrests were merely misdemeanor traffic offenses. Swinski later told Davis-Dietz that company policy required her to report any arrests, and, since she admitted that she had been arrested twice, but did not report them, she was being terminated.

The termination resulted in Davis-Dietz filing Title VII, FCRA, and ADA discrimination claims and a retaliation claim under the FMLA. She alleged both sex and disability discrimination, the disability being her alcohol dependency. She

alleged that the sex discrimination claim was supported by the fact that a male replaced her and that two other male Sears employees—Tim Trent and Bill Bass—were both charged with DUIs but were not terminated. She offered no evidence, however, that either Trent or Bass failed to notify Sears of their arrests within 5 days of their occurrence. Further, Davis-Dietz speculated that Swinski viewed as weak any female who was not a "strong woman" and that she considered alcoholism to be a weakness. Davis-Dietz admitted, however, that Swinski never made any comments about Davis-Dietz's sex.

Davis-Dietz's disability discrimination claim was based on the proximity of her termination with her return from the inpatient treatment program and her belief that Swinski thought alcoholism was a weakness and that managers should be strong and tough.[2] She based the FMLA claim on Swinksi's alleged unwillingness to accommodate Davis-Dietz's scheduling requirements due to her need to attend AA meetings. Davis-Dietz admitted, however, that she was not denied any requested leave but asserted that she was warned that her job was not protected under the law if she took more than 12 weeks of leave.

---

[6] Davis-Dietz cited to the district court two other examples of what she believed was disability discrimination: (1) receiving a final written warning from Swinski approximately four days after returning to work; and (2) Swinski's allegedly refusing to work with Davis-Dietz on her schedule, or to accommodate her needs. On appeal, however, she does not argue that the district court erred in granting summary judgment for Sears on her disability discrimination claims because of these reasons.

Swinski testified at a deposition that, following the July 14, 2005 meeting, she learned from another employee that Davis-Dietz had been arrested previously. Swinski, in turn, contacted Winnye Wilkes, another Sears employee, as well as the human resources department, "88 Sears," and was instructed to have the district loss manager investigate the matter and obtain the copies of any police reports. The district loss manager eventually learned of Davis-Dietz's two DUI arrests, and the police reports for these arrests were forwarded to "88 Sears."

Sears asserted the reason for Davis-Dietz's termination was because she failed to report her arrests, and it moved for summary judgment. The court granted summary judgment for Sears, finding that, even assuming Davis-Dietz established a prima facie case of discrimination under the McDonnell Douglas framework, she failed to establish that Sears's proffered reason for termination was pretext for unlawful discrimination.

**Discussion**

The only issue Davis-Dietz presents in this appeal is whether she offered sufficient evidence to support the proposition that Sears's proffered reason for firing her—that she failed to report her two arrests—was pretext.[3] To support her claim that the proffered reason was pretext, Davis-Dietz asserts that (1) Sears's

---

[3] We assume without deciding that the district court's finding of a prima facie case is correct.

7

arrest-notice policy did not apply to her (or, alternatively, that she complied with it because she reported to the manager—herself), (2) Sears did not follow its own policies in terminating her, (3) Sears promoted a male to take Davis-Dietz's position and treated other males who were arrested more favorably; and (4) Sears really fired her in retaliation for her taking time off under the FMLA.

We review a district court's grant of summary judgment de novo. Burton v. Tampa Hous. Auth., 271 F.3d 1274, 1276 (11th Cir. 2001). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "There is a genuine issue of material fact if the nonmoving party has produced evidence such that a reasonable fact-finder could return a verdict in its favor." Waddell v. Valley Forge Dental Assocs., Inc., 276 F.3d 1275, 1279 (11th Cir. 2001). However, the mere scintilla of evidence is not sufficient to survive summary judgment. See Allen v. Bd. of Public Educ. for Bibb County, 495 F.3d 1306, 1323 (11th Cir. 2007). The evidence and all factual inferences therefrom must be viewed in the light most favorable to the party opposing the motion. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).

Where, as here, a litigant relies on circumstantial evidence to show

discrimination under Title VII, this court uses the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).[4] Under this approach, if a plaintiff can establish a prima facie case of discrimination, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision. McDonnell Douglas, 411 U.S. at 802-03. If the employer meets this burden, then the burden shifts back to the plaintiff and merges with the ultimate burden of persuasion, which "remains at all times with the plaintiff," and the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Burdine, 450 U.S. at 253.

A plaintiff can satisfy her burden of showing pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Burdine, 450 U.S. at 256. There must be sufficient evidence to allow a reasonable fact-finder to conclude that the employer's

[4] This burden-shifting analysis applies to all the claims relevant in this appeal in addition to the Title VII claims. See Holly v. Clairson Indus, L.L.C., 492 F.3d 1247, 1255 (11th Cir. 2007) (analysis applies to ADA claims); Greenberg v. BellSouth Telecomms, Inc., 498 F.3d 1258, 1263-64 (11th Cir. 2007) (analysis applies to FCRA claims); Hulbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1297 (11th Cir. 2006) (analysis applies to FMLA retaliation claims).

9

articulated reasons are not believable.  Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005).  This can be accomplished by pointing to "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation.  Id.  The plaintiff must present significant and probative evidence of pretext in order to avoid summary judgment.  Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376 (11th Cir. 1996).

This court has explained that if the proffered reason was legitimate and non-discriminatory, then the plaintiff must "'meet [the proffered] reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason.'"  Brooks v. County Comm'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (quoting Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)).  This court has further explained that "[a] reason is not pretext for discrimination 'unless it is shown both that the reason was false, and that discrimination was the real reason.'"  Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original)).

Here, Davis-Dietz failed to provide sufficient evidence to show that Sears's proffered reason for firing her was pretext.  She failed to provide any evidence that Sears's proffered reason was false and she also failed to show that the true reason for her termination was unlawful discrimination.  At most, Davis-Dietz has put

forth evidence that either the arrest-notice policy did not apply to her because she was a manager or that she complied with it because she reported her arrest to herself. Either way, that is not enough. See Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1260-1261 (11th Cir. 2001) (a plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by unlawful discrimination). The key issue is whether Sears actually believed its proffered reason—not that Sears's reading of the policy is accurate or that Sears applied the policy correctly—and whether the real reason she was fired was due to unlawful discrimination. See id. (where a school board terminated the plaintiff but retained another employee and the school board's proffered reason for the decision was because it believed a prior agreement bound it to retain the other employee, the court concluded that the proffered reason was not pretext even if no prior agreement existed or if school board was mistaken as to agreement's meaning because plaintiff failed to present evidence that the board did not actually believe the prior agreement prohibited terminating the other employee and the real reason for termination was discrimination). Here, Davis-Dietz failed to provide any evidence that Sears did not actually believe the arrest-notice policy, as interpreted by Sears, was applicable to her and that the true reason for termination was unlawful discrimination.

11

To support her claim that the proffered reason was pretext, Davis-Dietz contends that Sears's policy was to conduct an investigation after being told about the arrest and Sears did not comply with its policy; she contends, therefore, that the proffered reason was pretext. Davis-Dietz misinterprets Sears's proffered reason for her termination, however. The investigation was only to take place *after the employee provides notice within five days of being arrested*. Here, Davis-Dietz did not provide notice: her failure to provide notice was the proffered reason for termination, not the fact that she was arrested. Similarly, she posits that other males who were arrested were not fired; therefore, her termination was the result of discriminatory treatment based on sex. Again, Davis-Dietz misconstrues Sears's proffered reason for her termination: Sears's proffered reason is that she failed to provide notice of her arrests. She presented no evidence that any other Sears employee failed to report being arrested but was retained.

She also argues that the fact that a male was promoted to replace her shows that she was fired because of her sex. Davis-Dietz did not, however, provide any evidence to support this contention. Finally, she failed to present any evidence that Sears really fired her in retaliation for her taking time off under the FMLA. Specifically, Davis-Dietz contends that she was told that she would be fired if she did not work her scheduled hours and if she requested time off to attend AA

12

meetings. Yet she admitted in her deposition that she did not take time off to attend these meetings before she was fired or that anybody at Sears told her she could not attend the meetings. She simply failed to present any evidence that the proffered reason was false and that the real reason for her termination was unlawful discrimination.

Accordingly, we **AFFIRM**.