[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14666
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 9, 2010
JOHN LEY
CLERK

Agency No. A093-409-812

ZHAO DI CHEN,

Petitioner-Appellant,

versus

U.S. ATTORNEY GENERAL,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(June 9, 2010)

Before BIRCH, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Zhao Di Chen, a native and citizen of China, seeks review of the Board of

Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") order denying his application for asylum, withholding of removal, and relief under the United Nations Convention Against Torture, and other Cruel, Inhuman, and Degrading Treatment or Punishment ("CAT"). INA §§ 208, 241; 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208.16(c). After review of the record and the parties' briefs, we DENY the petition.

## I. BACKGROUND

On 23 April 2007, the Immigration and Naturalization Service ("INS") served Chen with a notice to appear, charging him with removability under INA § 212, 8 U.S.C. § 1182, as an alien present in the United States without being admitted or paroled. Administrative Record ("AR") at 708. At an initial hearing, Chin admitted the allegations in the notice to appear and conceded removability. *Id.* at 76. On 30 May 2007, Chen filed an application for asylum, withholding of removal, and CAT relief, alleging that he feared persecution if returned to China because he had violated China's family planning policy.[1] *Id.* at 563-64.

---

[1] Although Chen also alleged past persecution based on his violation of China's family planning policy, he conceded at his removal hearing that he suffered no past persecution and agreed that his claim was limited to a well-founded fear of future persecution based on both his violation of China's family planning policy and his practice of Falun Gong. *See id.* at 94-96. Because Chen waived his claim of past persecution before the IJ and thus failed to exhaust administrative remedies with respect thereto, we lack jurisdiction to consider it. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam) ("We lack jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted his administrative remedies with respect thereto.").

The record reflects that Chen is from Fouchou City in the Fujian Province and had two daughters[2] with his first wife, who thereafter was forcibly sterilized by Chinese family planning officials. *Id.* at 102-04, 568. Chen and his first wife divorced in October 1998, and he married his current wife the following year. *Id.* at 104-06, 568. When Chen's wife became pregnant, he sent her to live at a relative's home because he had not obtained a permit to have a third child. *Id.* at 107, 568-69. Family planning officials learned of his wife's pregnancy, forced her to have an abortion, and, two weeks later, required her to be fitted with an inter-uterine device ("IUD") to prevent future pregnancies. *Id.* at 107-08, 569. Chen's wife subsequently had the IUD removed at a private clinic and became pregnant for the second time in May 2004. *Id.* Fearing she would be forced to terminate the pregnancy, Chen arranged to have his wife smuggled into the United States, where she suffered a miscarriage. *Id.* at 108-09, 569. After Chen's arrival in the United States in 2006, his wife became pregnant for the third time and gave birth to a daughter in February 2007. *Id*. at 109-11, 569-70. Chen believed that if he returned to China, he would be jailed and forced to undergo a vasectomy because

---

[2] According the 2007 Country Report, China's family planning law "grants married couples the right to have one birth and allows eligible couples to apply for permission to have a second child if they meet conditions stipulated in local and provincial regulations." *Id.* at 319. Chen does not argue that the birth of his second daughter was illegal, but that the birth of his third child in the United States would be viewed by family planning authorities as a violation of the family planning law. Because Chen appears to base his asylum claim only on the birth of his third child, we will assume for purposes of this petition for review that the birth of Chen's second daughter was authorized.

he has three children.  *Id.* at 111-12, 570.

Chen also testified at the removal hearing that he would be persecuted if returned to China on account of his involvement with Falun Gong,[3] which he did not practice in China but began practicing after arriving in the United States.  *Id.* at 112, 115.  He stated that he practiced privately, "in [his] room," two or three times a week, and would continue to practice Falun Gong if he were returned to China.  *Id.* at 113, 115, 136.  He further testified that he attended a Falun Gong demonstration in Washington in 2008, but remained on "the bus" and did not actively participate in the demonstration.  *Id.* at 113, 137.  According to Chen, the Chinese government is "against Falun Gong" and will arrest, jail, and beat its adherents.  *Id.* at 114-15.

In addition to Chen's asylum application and removal hearing testimony, the IJ also considered the U.S. Department of State's 2007 Profile of Asylum Claims and Country Conditions ("2007 Profile") and 2007 Country Report on Human Rights Practices in China ("2007 Report").  *See id.* at 250-371.  With respect to China's population control policy, the 2007 Profile noted the following.  Under the

_____

[3] According to the 2007 Asylum Profile for China ("2007 Profile"), Falun Gong is a movement that "blends aspects of Taoism, Buddhism, and the meditation techniques and physical exercises of qigong (a traditional Chinese exercise discipline) with the teachings of Falun Gong founder Li Hongzhi." *Id.* at 259. The 2007 Profile notes that, "[d]espite the mystical nature of Li's teachings, Falun Gong has no clergy or places of worship, and does not represent itself as a religion." *Id.*

government's family planning law, couples who have an unapproved child must pay a "social maintenance or compensation fee," while couples who comply with the policy receive rewards in the form of monthly stipends and preferential medical, food, and educational benefits. *Id.* at 272, 296, 306. "[S]ocial and economic pressures are common," and in the Fujian Province specifically, "unspecified 'remedial measures'" are used to deal with unauthorized pregnancies. *Id.* at 272. Additional penalties "may include loss of government-subsidized health benefits, job loss or demotion, loss of promotion opportunity for one or more years, . . . and other administrative penalties." *Id.* at 272, 306-08. While official government policy prohibits forcible sterilizations and abortions, they continue to be reported in some areas, and "[h]undreds of asylum applicants from Fujian claim that forced abortions and sterilizations continue to the present day." *Id.* 273, 275. According to one former family planning officer, a birth planning office in the Fujian Province was performing involuntary abortions and sterilizations as late as 1998. *Id.* at 275. The Fujian Provincial Birth Planning Committee ("FPBPC") maintained, however, that "the provincial government only imposes economic penalties on families that do not comply with the birth planning law" and "does not impose criminal penalties or physically coercive methods to ensure compliance." *Id.* at 276. The FPBPC acknowledged that there were "isolated" incidents of forced abortion and sterilization in the 1980's and early 1990's, but insisted that no

5

cases of forced abortion or sterilization have been reported in the ten years preceding the 2007 Profile and that all men and women who undergo surgical procedures are now required to provide informed, written consent. *Id.* at 275. Local physicians confirmed that they had seen no evidence of forced abortions or sterilizations among their patients from Fujian Province since the 1980's, and Consulate General officials who visited Fujian Province reported that although "coercion through public and other pressure has been used," they were aware of no cases in which physical force was used in connection with abortion or sterilization. *Id.* Consulate General interviews with visa applicants from Fujian Province also revealed "no evidence of forced abortion." *Id.* at 275-76.

Appendices to the 2007 Profile contain the national and regional regulations concerning family planning. *See id.* at 289-310. The regional regulations for Fujian Province, which permit each family to have one child, and in certain circumstances, two, provide incentives for using contraception and economic penalties for non-compliance with the region's population development plan. *Id.* at 305-07. According to a Fujian Provincial Government response to the U.S. Consulate General, the government does not employ forcible IUD insertion or sterilization for violations of the population control policy. *Id.* at 310.

The 2007 Report, which contains largely cumulative evidence, notes that the Chinese government's "birth limitation policies retain harshly coercive elements,"

including strict penalties that "leav[e] some women little choice but to abort pregnancies." *Id.* at 319. In addition to these "strict penalties," China's population control policy relies on education, propaganda, economic incentives, and coercive measures like job loss or demotion and social compensation fees. *Id.* at 320. The 2007 Report also noted that while the law "standardizes the implementation of the government's birth limitation policies[,] . . . enforcement varied significantly from place to place." *Id.* at 319.

With respect to the practice of Falun Gong, the 2007 Report noted that the Chinese government considers Falun Gong a "cult" and has prohibited persons from publicly engaging in Falun Gong activity. *Id.* at 329. Falun Gong sources reported that at least 6,000 Falun Gong practitioners were sent to prison, and 100,000 were sent to reeducation-through-labor camps. *Id.* While "core leaders" of Falun Gong were singled out for particularly harsh punishment, most practitioners were punished administratively. *Id.* Administrative punishments included reeducation-through-labor camps, renunciation of Falun Gong, and mandatory anti-Falun-Gong education sessions. *Id.* at 329-30.

Like the 2007 Report, the 2007 Profile reported that the Chinese government "continued to wage a severe campaign against Falun Gong," punishing not only those who engage in Falun Gong practices, but in some cases, those who admit belief in the movement "or simply refus[e] to recant their beliefs or condemn the

7

movement" as well.  *Id.* at 259.  The 2007 Profile further noted that "[t]he mere belief in Falun Gong, without any public practice of its tenets, has been sufficient grounds for practitioners to receive punishments ranging from loss of employment to imprisonment."  *Id.*  While some non-governmental organizations have documented close to 500 cases of Falun Gong members being detained, prosecuted, or sentenced to reeducation based on their Falun Gong activities, other "credible reports suggested the actual number was much higher."  *Id.*  The degree to which Falun Gong is restricted varies significantly from region to region, however.  *Id.* at 253.

The IJ ordered Chen removed after finding that while he testified credibly, he failed to demonstrate a well-founded fear of future persecution based on either his violation of China's family planning policy or his limited Falun Gong involvement.  *Id.* at 66, 70.  On appeal to the BIA, Chen argued that the Chinese government had established a "pattern or practice" of punishing those who violated the population control policy and that it had the "capacity" and "inclination" to punish him.  *Id.* at 20.   He also argued that he was previously persecuted for resisting China's population control policy[4] and that he had established a well-

---

[4] As discussed *supra*, Chen waived before the IJ his claim of past persecution based on "other resistance" to China's population control policy.  Although the BIA addressed the merits of this claim in its final decision, we are still without jurisdiction to consider it on petition for review.  *See Amaya-Artunduaga*, 463 F.3d at 1250.

8

founded fear of persecution based on his adherence to Falun Gong. *Id.* at 21-23. Finally, Chen asserted that he was entitled to withholding of removal and relief under CAT. *Id.* at 23-25.

The BIA first found that Chen failed to establish a well-founded fear of future persecution based on his involvement with Falun Gong because he was a "casual practitioner" and not one of the movement's "core leaders." *Id.* at 3-4. The BIA next found that Chen failed to establish a well-founded fear of future persecution based on the birth of his third daughter in the United States because the documentary evidence did not compel the conclusion that there was a "pattern or practice of persecution by the Chinese government against applicants on account of the birth of children in the United States" or "that forcible sterilizations are mandated in the [Fujian Province] after the birth of a third child." *Id.* at 4. Inasmuch as Chen failed to meet his burden of proof with respect to asylum, the BIA found that he necessarily failed to meet his burden of proof with respect to withholding of removal. *Id.* at 5. Finally, the BIA concluded that Chen failed to present facts demonstrating that it was more likely than not that he would be tortured if returned to China. *Id.* The BIA dismissed Chen's appeal accordingly, and this petition for review followed.

## II. DISCUSSION

Where, as here, the BIA issues its own decision and does not adopt the IJ's

opinion, we review the BIA's decision only. *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007) (per curiam). We review the BIA's legal conclusions *de novo* and its factual findings under the substantial evidence test, which requires us to affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007) (quotation marks and citation omitted). Under this highly deferential standard, we view the record in the light most favorable to the BIA's decision and are bound by that decision "unless [a] reasonable adjudicator would be compelled to conclude to the contrary." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (*en banc*) (citing 8 U.S.C. § 1252(b)(4)(B)). Accordingly, "even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Id.* at 1029.

To establish asylum eligibility, the petitioner bears the burden of proving with "credible, direct, and specific evidence in the record" that he suffered past persecution, *or* has a "well-founded fear" of future persecution, on account of "race, religion, nationality, membership in a particular social group, or political opinion." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (2005) (citation omitted); 8 C.F.R. § 208.13(b) (2010). An alien who has not shown past persecution may therefore still be entitled to asylum if he can prove that he has

10

"(1) a subjectively genuine and objectively reasonable fear of persecution that is (2) on account of a protected ground." *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1236 (11th Cir. 2006) (quotation marks and citations omitted). The alien may satisfy the subjective component by offering credible testimony that he genuinely fears persecution, and may satisfy the objective component by presenting "specific, detailed facts showing a good reason to fear that he . . . will be singled out for persecution" on account of a statutorily listed factor. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1289-90 (quotation marks, alteration, and citation omitted) (11th Cir. 2001); *see* 8 C.F.R. § 208.13(b)(2); *Mejia*, 498 F.3d at 1256 (alien "need only show that there is a reasonable possibility of suffering such persecution if he or she were to return to that country") (quotation marks, alteration, and citation omitted). An applicant's credible testimony may be sufficient, without corroboration, to sustain this burden. 8 U.S.C. § 1158(b)(1)(B)(ii) (2010); 8 C.F.R. § 208.13(a).

A. *Well-founded Fear of Persecution Based on Violation of Population Control Policy*

The BIA has held that in order to qualify for asylum based on violation of China's population control policy, the alien must show: (1) that the birth(s) "violated family planning policies in that alien's local province, municipality, or other locally-defined area," and (2) "that current local family planning enforcement efforts would give rise to a well-founded fear of persecution because of the

11

violation." *In re J-H-S-*, 24 I. & N. Dec. 196, 198 (BIA 2007).

We need not decide whether the birth of Chen's third child in the United States violates an established local policy because even assuming Chen can meet his first burden under the above test, he cannot meet his second burden of showing that such a violation "would be punished in the local area in a way that would give rise to an objective fear of future persecution." *Id.* at 199. The record in this case reflects that while China's family planning law retains coercive elements, monetary penalties, rather than forcible medical procedures, are the predominant means of enforcing the law in Fujian Province. Such enforcement efforts, insofar as they result only in "moderate economic impact," would not provide the basis for a well-founded fear of persecution. *In re J-W-S-*, 24 I. & N. Dec. 185, 191, 193-94 (BIA 2007) (analyzing similar documentary evidence, including the 2007 Profile, and concluding that "[a]t most, the evidence . . . suggest[ed] that the applicant and his wife may face sanctions and penalties upon returning to China because of the births of their United States citizen children," and thus "fail[ed] to establish that any sanctions imposed on parents of foreign-born children would rise to the level of persecution"). *See also J-H-S-*, 24 I. & N. Dec. at 202-03 (alien, who fathered two children in the Fujian Province before fleeing to the United States, could not prove that he would be punished in the local area in a way that would give rise to an objective fear of future persecution because the record, including the 2005 and

12

2006 Country Reports as well as the 2007 Profile, "lack[ed] persuasive evidence" that the birth of alien's second child "would trigger family planning enforcement efforts that would rise to the level of persecution"). Although the documentary evidence submitted in this case cites reports of forced sterilizations from Fujian Province, the record as a whole indicates that China's population control policy is largely dependent upon economic incentives and penalties and thus does not compel the conclusion that there is a pattern or practice in Fujian Province of forcibly sterilizing men like Chen or that Chen personally faces forced sterilization if returned to China. *See Adefemi*, 386 F.3d at 1027. Accordingly, we will not disturb the BIA's conclusion that Chen failed to establish a well-founded fear of persecution based on his alleged violation of China's population control policy. *See id.* at 1029.

B. *Well-founded Fear of Persecution Based on Involvement in Falun Gong*

Substantial evidence supports the BIA's conclusion that Chen is not entitled to relief based on his practice of Falun Gong. In *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1291-92 (11th Cir. 2006) (per curiam), we determined that a limited practice of Falun Gong, without more, is insufficient to establish a well-founded fear of persecution on a protected ground. The record in this case reflects that Chen is not a "core leader" of the Falun Gong movement and contains no evidence that Chinese authorities are even aware of Chen's Falun Gong practice in the

13

United States. The record thus does not compel the conclusion that Chen will be singled out for persecution based on his involvement with Fulan Gong if returned to China. *See id.* at 1292.

C.      *Eligibility for Withholding of Removal and CAT Relief*

To qualify for withholding of removal under the INA, an applicant must show that it is "more likely than not" that he will be persecuted or tortured upon returning to his home country. *Fahim v. U.S. Att'y Gen.*, 278 F.3d 1216, 1218 (11th Cir. 2002) (per curiam) (quotation marks and citation omitted); *see* 8 C.F.R. § 208.16(b)(2). To qualify for CAT relief, an applicant must demonstrate that it is "more likely than not" that he will be tortured upon his return to the proposed country of removal.[5] *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 819 (11th Cir. 2004); 8 C.F.R. 208.16(c)(2). Inasmuch as Chen has not satisfied the less stringent standard for establishing asylum eligibility, his claims for withholding of removal

---

[5] Torture is defined as:

> [A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

*Id.* at 819-20 (citing 8 C.F.R. § 208.18(a)(1)).

under the INA and CAT relief necessarily fail.  *See Zheng*, 451 F.3d at 1292; *see also Forgue*, 401 F.3d at 1288 n.4 (noting that where a petitioner "fail[s] to establish a claim of asylum on the merits, he necessarily fails to establish eligibility for withholding of removal or protection under CAT").

## III. CONCLUSION

Chen petitions us for review of the BIA's dismissal of his appeal from the IJ's denial of asylum, withholding of removal, and CAT relief.  Because the evidence does not compel a finding that Chen has a well-founded fear of future persecution based on his violation of family planning laws or his involvement with Falun Gong, we DENY the petition.

**PETITION DENIED.**