**A.D., a minor who sues by and through her mother and next friend, Meeka McGHEE, Plaintiff,**

v.

**ALABAMA DEPARTMENT OF HUMAN RESOURCES, et al., Defendants.**

**Case No. 2:10–cv–00311–CLS.**

United States District Court, N.D. Alabama, Southern Division.

Jan. 31, 2014.

Broderick S. Black, James N. Caldwell, Birmingham, AL, for Plaintiff.

Felicia M. Brooks, State of Alabama Department of Human Resources, Sharon E. Ficquette, Alabama Department of Human Resources, Montgomery, AL, for Defendants.

## MEMORANDUM OPINION

LYNWOOD SMITH, District Judge.

On March 11, 2013, the magistrate judge's report and recommendation was entered, and the parties were allowed therein fourteen (14) days in which to file objections to the recommendations made by the magistrate judge. On March 25, 2013, defendants Lori McCullough and Ashley Wilson filed objections to the magistrate judge's report and recommendation, accompanied by exhibits. At the court's direction, plaintiff filed a response to the objections. Based on the objections and the additional evidence filed by defendants, the magistrate judge entered a supplemental report and recommendation on May 9, 2013, and the parties were allowed therein fourteen (14) days in which to file objections to the supplemental recommendations made by the magistrate judge. On May 23, 2013, plaintiff filed objections to the magistrate judge's supplemental report and recommendation.

After careful consideration of the record in this case, the magistrate judge's report and recommendation and defendants' objections thereto, the magistrate judge's supplemental report and recommendation and plaintiff's objections thereto, the court hereby ADOPTS the reports of the magistrate judge. The court further ACCEPTS the recommendations of the magistrate judge as to defendants Alabama Department of Human Resources; Nancy Buckner, Director of Alabama Department of Human Resources, in her individual capacity; the Jefferson County Department of Human Resources; and Amanda Rice, Director of Jefferson County Department of Human Resources, individually, that the motion for summary judgment of these defendants be granted and this action dismissed with prejudice as to these defendants. The court further ACCEPTS the supplemental recommendations of the

magistrate judge as to defendants Lori McCullough and Ashley Wilson, that the motion for summary judgment filed by these defendants be granted and this action dismissed with prejudice as to these defendants. The court further ACCEPTS the supplemental recommendations of the magistrate judge, that plaintiff's claims against NeKeshia Wyatt and Marco Clarence Wyatt be dismissed without prejudice for lack of prosecution.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

## FINAL JUDGMENT

In accordance with the Memorandum Opinion entered contemporaneously herewith and Federal Rule of Civil Procedure 58, it is ORDERED, ADJUDGED, and DECREED that the motion for summary judgment filed by defendants Alabama Department of Human Resources; Nancy Buckner, Director of Alabama Department of Human Resources, in her individual capacity; the Jefferson County Department of Human Resources; Amanda Rice, Director of Jefferson County Department of Human Resources, individually; Ashley Wilson, Jefferson County Department of Human Resources social worker, individually; and Lori McCullough, Jefferson County Department of Human Resources social worker, individually, is due to be, and it hereby is GRANTED, and this action hereby is DISMISSED WITH PREJUDICE as to these defendants. It is further ORDERED, ADJUDGED, and DECREED that plaintiff's claims against NeKeshia Wyatt and Marco Clarence Wyatt are due to be and hereby are DISMISSED WITHOUT PREJUDICE for lack of prosecution.

## SUPPLEMENTAL REPORT AND RECOMMENDATION

HARWELL G. DAVIS, III, United States Magistrate Judge.

The above-entitled civil action is before the court on the Motion for Summary Judgment filed by defendants. (Doc. 24). Plaintiff, A.D., a minor who sues by and through her mother and next friend, Meeka McGhee, commenced this action on February 10, 2010, by filing a complaint against the Alabama Department of Human Resources; Nancy Buckner, Director of Alabama Department of Human Resources, in her individual capacity; the Jefferson County Department of Human Resources; Amanda Rice, Director of Jefferson County Department of Human Resources, individually; Ashley Wilson, Jefferson County Department of Human Resources social worker, individually; Lori McCullough, Jefferson County Department of Human Resources social worker, individually; NeKeshia Wyatt, individually; and Marco Clarence Wyatt, individually.

The complaint alleges that in August 2007, one-year-old A.D. was placed in the Wyatts' home by defendants. It is further alleged that while in the Wyatts' custody, A.D. received third degree immersion burns to over half of her body. The burns allegedly occurred on February 10, 2008, but were not treated or reported to DHR until February 11, 2008. Plaintiff claims the immersion of the plaintiff into scalding water was sufficiently severe and pervasive enough to amount to unnecessary wanton infliction of emotional pain and harm. As to the State defendants, plaintiff alleges that the Alabama Department of Human Resources and its officials knew or should have known about the unsafe and unstable environment of the foster home and that there was a failure to consistently monitor the foster home and su-

pervise the well-being of the plaintiff, resulting in a violation of plaintiff's rights to equal protection and substantive due process. Plaintiff further alleges that there was deliberate indifference to "known and obvious consequences of allowing a child to reside in a foster home or hostile environment without continued supervision." Plaintiff asserts a cause of action pursuant to 42 U.S.C. § 1983 for violation of plaintiff's rights under the Eighth and Fourteenth Amendments and a general claim pursuant to 28 U.S.C. § 1331 for violation of her right to be safe and secure, asserting a constitutional right to be free from "unlawful abuse in an involuntary placement, foster home." (Doc. 1, Complaint).

Plaintiff also made state law claims in the complaint, asserting causes of action for negligence, wantonness, outrage, bad faith, assault and battery, *respondeat superior*, *req ipsa loquitur* and negligent and/or wanton and malicious training, supervision and retention. These claims were dismissed without prejudice on July 26, 2010. (Doc. 18, Partial Dismissal Order). The reason for dismissal of the claims was the pendency of an action in the Circuit Court of Jefferson County by plaintiff against the same defendants, which was filed in state court prior to the complaint in this action. *A.D., etc. v. Alabama Dep't of Human Resources, et al.,* Case No. CV2010–315. Thus, only Count Nine, alleging a violation of 42 U.S.C. § 1983, and Count Ten, alleging a violation of 28 U.S.C. § 1331, remain.

On March 11, 2013, the undersigned entered a report and recommendation, recommending that the Motion for Summary Judgment be granted as to the Alabama Department of Human Resources, the Jefferson County Department of Human Resources, Nancy Buckner, and Amanda Rice. It was further recommended that the Motion for Summary Judgment as to defendants Ashley Wilson and Lori McCullough be denied due to the existence of genuine issues of material fact as to whether these defendants were deliberately indifferent to to A.D.'s right to be reasonably safe from harm while in the Wyatts' care.

Defendants Wilson and McCullough filed objections to the report and recommendation on March 25, 2013.[1] (Doc. 37). They raise two arguments: (1) that they are entitled to summary judgment on the basis of qualified immunity because plaintiff's testimony alone was not "substantial evidence" sufficient to create a genuine issue of material fact as to whether they ignored and failed to investigate her complaints of physical injury to her children; and (2) plaintiff's claims in this case are barred by collateral estoppel because of the final state court judgment granting summary judgment in favor of all defendants in the state court case. For the first time, defendants provided this court with the information and supporting documentation showing that on May 1, 2012, the Jefferson County Circuit Court granted summary judgment in favor of all defendants with respect to all of plaintiff's state law claims in that court. This information should have been provided to this court long before it was and would have saved much time and effort. Nonetheless, it must be considered now.

The court ordered plaintiff to respond to defendants' objections. With respect to the first objection, the undersigned agrees

---

1. Plaintiff did not file any objections to the recommendation to grant summary judgment in favor of defendants Alabama Department of Human Resources; Nancy Buckner, Director of Alabama Department of Human Resources, in her individual capacity; the Jefferson County Department of Human Resources; and Amanda Rice, Director of Jefferson County Department of Human Resources, individually.

that, taken in the light most favorable to plaintiff, the evidence is sufficient to create a genuine issue of material fact whether defendants are entitled to qualified immunity. The court is not free to ignore the testimony of A.D.'s mother that she observed injuries to her children and was told of abuse by her daughter, and that the mother reported this information to the Department of Human Resources and defendants Wilson and McCullough.

The second objection is more substantial. Defendants argue that collateral estoppel requires this court to grant summary judgment to them on plaintiff's § 1983 and § 1331 claims, inasmuch as the standard of proof for deliberate indifference is greater than for claims of negligence; therefore, the finding by the state court that defendants were not negligent necessarily forecloses any claim that defendants were deliberately indifferent. Plaintiff's response to the objection focuses on the doctrine of *res judicata*, which differs from collateral estoppel. Plaintiff argues that the § 1983 claims are not barred because they have not been litigated in state court. Plaintiff also takes issue generally with the quality, extensiveness and fairness of the procedures followed by the state court in finding that defendants were entitled to summary judgment, and asserts that such considerations should guide this court. However, it is noted that plaintiff did not appeal the adverse decision of the state court, and that decision is now final.

 Under the doctrine of *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or

could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). *Res judicata* makes a final, valid judgment conclusive on the parties, and those in privy with them, as to all matters, fact and law, that were or should have been adjudicated in the proceeding. *First Alabama Bank of Montgomery, N.A. v. Parsons Steel, Inc.*, 747 F.2d 1367 (11th Cir.1984); *Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176 (11th Cir.1981). Under Alabama law, "[t]he elements of *res judicata*, or claim preclusion, are (1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both suits." *Dairyland Ins. Co. v. Jackson*, 566 So.2d 723, 725 (Ala.1990). " 'If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation.' " *Chapman Nursing Home, Inc. v. McDonald*, 985 So.2d 914, 919 (Ala.2007) (quoting *Equity Res. Mgmt., Inc. v. Vinson*, 723 So.2d 634, 636 (Ala.1998)).

 In this situation, it is clear that the state court did not have a § 1983 claim before it and that plaintiff could not add a § 1983 claim.[2] Therefore, *res judicata*, or claim preclusion, is not applicable. However, the doctrine of collateral estoppel, or issue preclusion, does apply.

 Collateral estoppel or issue preclusion means that "preclusive effect will be given to the adjudication of an issue

---

**2.** It is important to note the procedural posture of the two cases. Plaintiff filed the state court action on February 3, 2010, raising only state law claims. Plaintiff then filed this action in federal court, asserting a § 1983 claim along with the same state law claims. Defendants removed the first filed case from state court, asserting that it stated a constitutional claim on its face. Case No. 2:10–cv–00453–SLB. Judge Blackburn remanded the case *sua sponte* to the Jefferson County Circuit Court for lack of jurisdiction. Thereafter, the state law claims were dismissed without prejudice from this action because they already were pending in the state court, leaving only the § 1983 claim.

litigated in a prior proceeding if the issue in the subsequent proceeding is identical to the one involved in the prior action, the issue was actually litigated, and the determination of the issue was necessary in the prior action." *Williams v. Bennett,* 689 F.2d 1370, 1381 (11th Cir.1982). Put another way in *Hercules Carriers, Inc. v. Claimant Florida Dep't of Transp.,* 768 F.2d 1558 (11th Cir.1985):

> Under the doctrine of collateral estoppel, the resolution by a court of an issue of fact or law necessary to its judgment precludes the relitigation of that issue in a subsequent suit based on a different cause of action involving a party to the prior litigation.

*Id.* at 1578 (footnote omitted). In Alabama, for collateral estoppel to apply: "(1) The issue must be identical to the one involved in the previous suit; (2) the issue must have been actually litigated in the prior action; and, (3) the resolution of the issue must have been necessary to the prior judgment." *Martin v. Reed,* 480 So.2d 1180, 1182 (Ala.1985).

 In this instance, the same parties plaintiff and defendant were involved in the state court case and the federal case. Defendants have provided the court with the motion for summary judgment they filed in the state court (Doc. 37, Ex. C), plaintiff's response to the motion for summary judgment (*id.,* Ex. E), defendants' reply to pl's response (*id.,* Ex. I), and the State court's order granting the motion for summary judgment (*id.,* Ex. G). It appears that the evidence submitted in the state court on summary judgment is the same as submitted in this court.

In their motion for summary judgment, defendants Wilson and McCullough argued that they were entitled to state agent immunity, in their personal capacities, from

claims for negligence or wantonness in the exercise of their duties. It was also argued that there was no substantial evidence of negligence or wantonness, in part because the actions of the Wyatts were not foreseeable and they did not act with any consciousness or knowledge of danger to A.D. Defendants also contended that there was no substantial evidence to support claims of outrage, *res ipsa loquitur, respondeat superior* or bad faith. Defendants further asserted that they were entitled to statutory immunity from liability for participation in child abuse removals and judicial proceedings related thereto, pursuant to *Ala.Code* § 26–14–9, and prosecutorial immunity.[3]

The State court order granting summary judgment to defendants reads in full:

> After reviewing the submissions of the parties and hearing oral arguments regarding the Motion for Summary Judgment filed by Defendants Alabama Department of Human Resources, Jefferson County Department of Human Resources, Nancy Buckner, Amanda Rice, Ashley Wilson and Lori McCoullough [sic] the Court finds that there are no genuine issues of material fact and said Motion is **GRANTED.**
>
> **WHEREFORE, PREMISES CONSIDERED,** he Court hereby grants summary judgment in favor of **said defendants only.** The Court further notes that pursuant to ARCP 54(b), there is no just reason for delay and judgment is entered on behalf of Defendants Alabama Department of Human Resources, Jefferson County Department of Human Resources, Nancy Buckner, Amanda Rice, Ashley Wilson and Lori McCoullough [sic].
>
> Costs taxed as paid.

---

**3.** This claim of prosecutorial immunity was rejected in the report and recommendation herein because there was no prosecutorial element to their duties of supervising the Wyatts and the well-being of A.D. and her siblings.

(Doc. 37, Ex. G). While it would have been helpful to have some discussion by the state court of the grounds on which summary judgment was granted, ultimately, it is not necessary.

■ In *Allen v. McCurry, supra,* the Supreme Court held that collateral estoppel barred a § 1983 claim for unconstitutional search and seizure by a convicted defendant. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." 449 U.S. at 94, 101 S.Ct. at 414. The doctrine applies whether the first case was in state or federal court. *Id.* at 95–96, 101 S.Ct. at 415–16.

In this case, the original report and recommendation found that a genuine issue of material fact existed as to whether Wilson and McCullough exhibited deliberate indifference to a known injury, a known risk, or a specific duty and whether their failure to perform the duty or act to ameliorate the risk of injury was a proximate cause of A.D.'s deprivation of rights under the Constitution. However, a finding of deliberate indifference requires more than a showing of negligence. *See Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). It was argued in the state court that plaintiff failed to present substantial evidence of negligence or wantonness, outrage, *res ipsa loquitur, respondeat superior* or bad faith, in addition to arguing state agent immunity, in their personal capacities, from claims for negligence or wantonness in the exercise of their duties. Summary judgment was granted to Wilson and McCullough in state court with respect to the claims of negligence or wantonness, outrage, *res ipsa loquitur, respondeat superior* and bad faith.

Collateral estoppel does apply in this case because the issue of whether Wilson and McCullough were negligent, wanton or acted in bad faith or committed the tort of outrage, is identical to the question of whether they acted with deliberate indifference. Indeed, since they were found not to be negligent by the state court, they cannot have acted with deliberate indifference. Further, the issue was actually litigated in the prior action, and plaintiff had a full and fair opportunity to present all arguments in favor of the claim that Wilson and McCullough were negligent or wanton, acted in bad faith or committed the tort of outrage. Finally, the resolution of the issue of Wilson and McCullough's legal and factual culpability was necessary to the prior judgment. Therefore, the state court's grant of summary judgment in favor of Wilson and McCullough precludes the relitigation of the issue of Wilson and McCullough's legal and factual culpability in this case, on the theory of deliberate indifference.

Based on the foregoing, the undersigned magistrate judge hereby REVISES the original report and recommendation with respect to defendants Ashley Wilson and Lori McCullough, and it is RECOMMENDED that the motion for summary judgment of defendants Ashley Wilson and Lori McCullough be GRANTED, and that plaintiff's claims against these defendants be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that plaintiff's claims against NeKeshia Wyatt and Marco Clarence Wyatt be DISMISSED WITHOUT PREJUDICE FOR LACK OF PROSECUTION. The undersigned adopts by reference the remainder of the original report and recommendation.

### Notice of Right to Object

The parties are DIRECTED to file any objections to this Report and Recommendation within a period of fourteen (14) days

from the date of entry. Any objections filed must specifically identify the findings in the magistrate judge's recommendation objected to. Frivolous, conclusive, or general objections will not be considered by the district court.

Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a *de novo* determination by the district court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982). *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982). *See also Bonner v. Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc),* adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 9th day of May, 2013.

## *REPORT AND RECOMMENDATION*

The above-entitled civil action is before the court on the Motion for Summary Judgment filed by defendants. (Doc. 24). Plaintiff, A.D., a minor who sues by and through her mother and next friend, Meeka McGhee, commenced this action on February 10, 2010, by filing a complaint against the Alabama Department of Human Resources; Nancy Buckler, Director of Alabama Department of Human Resources, in her individual capacity; the Jefferson County Department of Human Resources; Amanda Rice, Director of Jefferson County Department of Human Resources, individually; Ashley Wilson, Jefferson County Department of Human Resources social worker, individually; Lori McCullough, Jefferson County Department of Human Resources social worker, individually; NeKeshia Wyatt, in-dividually; and Marco Clarence Wyatt, individually.

The complaint alleges that in August 2007, one-year-old A.D. was placed in the Wyatts' home by defendants. It is further alleged that while in the Wyatts' custody, A.D. received third degree immersion burns to over half of her body. The burns allegedly occurred on February 10, 2008, but were not treated or reported to DHR until February 11, 2008. Plaintiff claims the immersion of the plaintiff into scalding water was sufficiently severe and pervasive enough to amount to unnecessary wanton infliction of emotional pain and harm. As to the State defendants, plaintiff alleges that the Alabama Department of Human Resources and its officials knew or should have known about the unsafe and unstable environment of the foster home and that there was a failure to consistently monitor the foster home and supervise the well-being of the plaintiff, resulting in a violation of plaintiff's rights to equal protection and substantive due process. Plaintiff further alleges that there was deliberate indifference to "known and obvious consequences of allowing a child to reside in a foster home or hostile environment without continued supervision." Plaintiff asserts a cause of action pursuant to 42 U.S.C. § 1983 for violation of plaintiff's rights under the Eighth and Fourteenth Amendments and a general claim pursuant to 28 U.S.C. § 1331 for violation of her right to be safe and secure, asserting a constitutional right to be free from "unlawful abuse in an involuntary placement, foster home." (Doc. 1, Complaint). State law claims initially made in the complaint were dismissed without prejudice on July 26, 2010. (Doc. 18, Partial Dismissal Order). Thus, only Count Nine, alleging a violation of 42 U.S.C. § 1983, and Count Ten, alleging a violation of 28 U.S.C. § 1331, remain.

It is noted that the Wyatts have never filed a response to the complaint despite being served, nor has plaintiff sought a default judgment against the Wyatts for their failure to answer or otherwise defend the complaint.

A motion for summary judgment was filed by the Alabama Department of Human Resources, Nancy Buckner, Jefferson County Department of Human Resources, Lori McCullough, Amanda Rice, and Ashley Wilson on December 10, 2010. (Doc. 24, Motion for Summary Judgment). This matter is now ready for disposition.

### BACKGROUND

The Alabama Department of Human Resources (ADHR) administers the Child Welfare Program in Alabama, including the investigation of most complaints of child abuse and neglect. *Ala.Code* §§ 38–2–6(2) and 26–14–7, *et seq.*, as amended. The ADHR and the Jefferson County Department of Human Resources (JCDHR) are part of one governmental unit under the policy direction of the ADHR. *Ala. Code* §§ 38–2–6 and 32–2–8, as amended; *Williams v. James,* 420 So.2d 773 (Ala. 1982).

The Commissioner of the ADHR is Nancy Buckner, serving as its Chief Executive Officer. *Ala.Code* § 38–2–3. (Doc. 26–1, Affidavit of Nancy Buckner). She took this position on September 15, 2008. (*Id.*). Amanda Rice is the Director of the JCDHR. (Doc. 26–2, Affidavit of Amanda Rice). She took this position on November 3, 2008. (*Id.*). Ashley Wilson is a Social Worker for JCDHR, assigned to the A.D. case. (Doc. 26–12, Affidavit of Ashley Wilson). Lori McCullough is a Social Services Supervisor and supervised Ashley Wilson. (Doc. 26–10, Affidavit of Lori McCullough).

On June 25, 2008, NeKeshia Wyatt was indicted for violation of *Ala.Code* § 26–15–3.1, Child Abuse. (Doc. 26–9, Indictment). In the indictment, it is alleged that Wyatt being the natural parent, stepparent, adoptive parent, legal guardian, custodian or a person who had the permanent or temporary care or custody or responsibility for the supervision of a child under eighteen years of age, to wit: [A.D.], whose name is not otherwise known to the Grand Jury, did on or about February 10, 2008, torture, willfully abuse, cruelly beat, or otherwise willfully maltreat said child, by, to wit: putting her into scalding water causing serious burns on her legs, and did such act on more than one occasion.

(*Id.*).

In the complaint, Meeka McGhee alleges that she is the mother of A.D., who, in August 2007, was placed in the home of Marco and NeKeshia Wyatt, located in Calera, Alabama. Plaintiff alleges that the home was qualified and approved by JCDHR as a safe and stable environment for A.D. and her siblings to reside. (Doc. 1, Complaint, at ¶¶ 2, 11). She further claims that, on February 10, 2008, A.D. was in the custody of the Wyatts when she received immersion burns for which she did not receive treatment until the following day, February 11, 2008. (*Id.* at ¶ 12).

Plaintiff's claim pursuant to 42 U.S.C. § 1983 is brought against the ADHR, NeKeshia Wyatt, Marco Wyatt, and ADHR/JCDHR employees/officials Nancy Buckner, Amanda Rice, Ashley Wilson, and Lori McCullough. Plaintiff further alleges that defendants acted under color of state law in violating plaintiff's federally protected rights. Plaintiff asserts that defendants deprived her of statutory and constitutional rights of due process and equal protection under the Fourteenth Amendment to the United States Constitution and the Eighth Amendment to the United States Constitution.

In particular, plaintiff asserts in Count Nine a constitutional right to be free from

"unlawful abuse in an involuntary placement, foster home," and "free from cruel and unusual punishment while in a foster home." (*Id.* at ¶¶ 49, 50). As to the ADHR defendants, plaintiff alleges that ADHR and its officials knew or should have known about the unsafe and unstable environment of the foster home and that there was a failure to consistently monitor the foster home and supervise the well-being of the plaintiff. This is asserted to be a violation of plaintiff's right to equal protection and substantive due process. (*Id.* at ¶¶ 51–54). Plaintiff also alleges that there was a deliberate indifference to "known and obvious consequences of allowing a child to reside in a foster home or hostile environment without continued supervision." (*Id.* at ¶ 55).

In Count Ten, citing 28 U.S.C. § 1331, plaintiff asserts that she had a constitutional right to expect to be safe and secure while in the custody of the ADHR, its officials and foster parents. (*Id.* at ¶ 58). Plaintiff further alleges that she had a constitutional right to expect ADHR, its officials and foster parents to treat her fairly and assure her well-being while not subjecting her to the infliction of physical harm and injury while in foster care. (*Id.* at ¶ 59). Title 28 U.S.C. § 1331 is a statute that simply provides that the federal courts have original jurisdiction over all claims arising under the Constitution of the United States. It is not a separate and distinct cause of action from that alleged under Count Nine. Thus, these two counts are merged for consideration as a claimed violation of 42 U.S.C. § 1983. Plaintiff seeks compensatory and punitive damages.

As noted above, ADHR Director Nancy Buckner did not take her current position with ADHR until several months after the events that are the subject of this lawsuit. Likewise, Amanda Rice was not an employee of the ADHR until February 2008 and became Director of JCDHR in November 2008, which was also several months after the events alleged in this lawsuit. There is no evidence that Buckner or Rice had any involvement with regard to A.D., her family, or her placement with the Wyatts.

Prior to August 15, 2007, the children of Ms. McGhee were in the custody of a previous legal custodian. They were removed from Ms. McGhee's custody based on a Family Court of Jefferson County order dated December 8, 2006, based on Ms. McGhee's lack of stable housing. At that time, the children were placed in the custody of family friend Sharon Sanders. (Doc. 26–7, McCullough Demo., at Ex. 1, Court Order). However, in August 2007, it came to the attention of JCDHR that a sibling of A.D. received burns when the previous legal custodian, Sharon Sanders, was "doing her hair." Ms. Sanders did not immediately take the child to see a doctor. Upon learning of this incident, JCDHR employee Ashley Wilson filed petitions to have the children removed from their legal custodian, Ms. Sharon Sanders.

On August 13, 2007, a meeting was held regarding the burns that occurred to A.D.'s sibling. Present were Ashley Wilson, Lozenge Carter (a "facilitator"), Jeffery Morrow (the stepfather), Meeka McGhee, Lori McCullough, Colias Hood (a program supervisor) and Sharon Sanders. At the meeting, Ms. Sanders gave an account of what happened to the child. It was then decided that the children would be removed from the home. (Doc. 26–6, Wilson Demo., at 11–12; Doc. 26–7, McCullough Demo., at 17–19).

At this time, there was a Family Court order in place wherein custody of the children had been removed from the care of Meeka McGhee. Thus, it was necessary to inform the judge of the current situation. It was also decided that a home evaluation

would be performed on any potential custodians for Ms. McGhee's children. (Doc. 26–7, McCullough Demo., at 19–20). Sometime during this period, the Wyatts were put forth as potential custodians for the children.

According to plaintiff, the Wyatts were put up as potential custodians by a church member, Myra Young. Ms. McGhee testified that she had known Young for about three years and that Young introduced the Wyatts to her at a court proceeding that occurred on August 15, 2007. According to McGhee, it was Ms. Young who brought the Wyatts to the attention of Lori McCullough and the JCDHR. (Doc. 26–3, McGhee Demo., at 32–35, 37).

Plaintiff testified that, at first, she did not want the children to go to the custody of the Wyatts. She wanted them to go to Ms. Young. However, she stated that Ms. Young was "talking up" the Wyatts and said that she (Ms. Young) could not take them because she had an "internal illness." (*Id.* at 42–43). Plaintiff was advised by Ms. Wilson that, if the children did not go to the Wyatts, they would go to foster care. Initially, Ms. McGhee did not want the children to go to foster care, but she changed her mind later in the day. She eventually agreed for the Wyatts to have custody after she was advised that, if the children went to foster care, it would be more difficult for her to get them back. (*Id.* at 44–45). In addition, Ms. McGhee stated that she trusted Ms. Young's recommendation of the Wyatts. (*Id.* at 47). She understood that the Wyatts were not foster care parents. (*Id.* at 48). In order for the children to be placed in foster care, a judge would have to order it. (Doc. 26–6, Wilson Demo., at 23).

Once the Wyatts were recommended as custodians, Ms. Wilson performed a "CAN" investigation (Child Abuse and Neglect Central Registry) to determine if the Wyatts were in the ADHR database of individuals who had previous problems with child abuse or neglect. Lori McCullough did a home evaluation of the Wyatts. (*Id.* at 19–20). Wilson testified that she did not take fingerprints of the Wyatts or do a criminal history check of them because JCDHR does not have access to this information. (*Id.*).

In performing the home evaluation, Lori McCullough went to the home of the Wyatts and observed the facility. She also talked with both parents about what it meant to be custodians at JCDHR and made them aware that they were not foster parents and would not receive any payment from JCDHR in regard to keeping the children. McCullough actually made two trips to the residence because Mr. Wyatt was not present during the first visit. She returned a few hours after the first visit in order to interview him. (Doc. 26–7, McCullough Demo., at 22). According to Ms. McCullough, during the home evaluation, the Wyatts were asked about their criminal history, but noted that as Department of Human Resources workers and supervisors, they do not have access to this information. (*Id.* at 22–23). Ms. McCullough also determined that the Wyatts had children of their own and noted that the residence had sufficient room to accommodate McGhee's children. (*Id.* at 44–46 and Ex. 5, Home Evaluation). After talking to the Wyatts, McCullough concluded that "they both have a kind heart and wanted to reach out to help three children who were away from their mother...." (*Id.* at 45). Her assessment was that the home of Marco and NeKeshia Wyatt was appropriate for the three McGhee children. (*Id.*). No information was provided to Wilson or McCullough by plaintiff, the Wyatts, Ms. Young or any other source to indicate that there was any propensity for abuse and/or neglect by either Mr. or Mrs. Wyatt prior to the place-

ment of the children in their home by the Family Court Judge.

According to *Ala.Code* § 12–15–71 (1975), if a child is found to be dependent, the court may make certain orders of disposition to protect the welfare of the child which includes transfer of legal custody to a relative or other individual who, after study by the Department of Human Resources, is found by the court to be qualified to receive and care for the child. The court, pursuant to this section, may also "make any other orders as the court in its discretion shall deem to be for the welfare and best interests of the child."

Pursuant to *Ala.Code* § 12–15–69 (1975), after a petition alleging dependency has been filed, the court may direct that a predisposition study and report be made to the court by the Department of Human Resources when the petition alleges that a child is dependent, concerning the child, the child's family, environment and other matters relevant to the needs for treatment or disposition of the case. The home evaluation prepared by Ms. McCullough fell within these parameters. Carolyn Lapsley, Deputy Commissioner for Family and Children's Services for ADHR, has 32 years of experience with child welfare cases. According to Lapsley, it is routine for such reports to be provided to juvenile courts. In her opinion, the actions taken by Wilson and McCullough were reasonable and appropriate under the circumstances. (Doc. 26–13, Affidavit of Carolyn Lapsley, at 6).

On August 15, 2007, the judge in the Family Court of Jefferson County entered an order placing custody of the McGhee children with the Wyatts. The order further provided that Ms. McGhee could have up to six (6) hours of unsupervised day visits every Saturday and three (3) hours every Wednesday, as arranged with the custodian. It also prohibited McGhee from allowing the children's maternal grandmother to have any contact with the children. (Doc. 26–7, McCullough Demo, at Ex. 2, Court Order). In addition, the Order directed that JCDHR was to make regular supervisory visits to the children at least once every sixty (60) days. (*Id.*). The Order was signed by a Jefferson County Family Court Senior Trial Referee and ratified, confirmed and adopted by the Jefferson County Circuit Court Judge. (*Id.*).

Ashley Wilson testified that she had contact with the children in compliance with the August 15, 2007, court order in September, October, and November 2007. (Doc. 26–6, Wilson Demo., at 13–14).

On December 13, 2007, a follow-up order was entered by the Family Court of Jefferson County again vesting custody in the Wyatts. In this order, the Jefferson County Department of Human Resources was relieved of further supervision of this case. The order was signed by a Senior Trial Referee and adopted by a Jefferson County Circuit Judge. (Doc. 31–2, Court Order dated December 13, 2007).

Plaintiff alleges that sometime in 2007, after the Wyatts obtained custody of her children, she observed bruises on A.D. and welts and bruises on her other two children. She also alleges that the children complained of being hungry and that, when she observed them, they wore dirty clothing. According to plaintiff, A.D. had the worst marks on her with marks that appeared to be fingerprints on her legs and arms and a belt mark on her back. McGhee states that she reported this to Ashley Wilson and Lori McCullough. She did not report this to the police. (Docs. 26–3 and 26–4, McGhee Demo., at 57–58, 82). McGhee testified that she made numerous calls to Wilson and McCullough advising them of the fact that the Wyatts were hurting her children. McGhee testified that, when she started to complain

about the injuries she was seeing on her children, the Wyatts began denying her access to her children. She testified that she also reported this to Wilson, McCullough and McCullough's supervisor. (*Id.* at 60–65). Wilson denies that McGhee ever made such a report. (Doc. 26–6, Wilson Demo., at 39). According to Ms. McGhee, her oldest child, age 11, told her that no one came out to check on them even after McGhee had complained about the bruises and welts. (Doc. 26–4, McGhee Demo., at 80–81).

Ms. McGhee further testified that in 2008, she noticed that A.D. had a little bruise on her head and another one of her children looked like she had been hit in the face. Her other child looked like he had been hit in the arm with a belt. (*Id.* at 83). She testified that she again reported this to Ms. Wilson and Ms. McCullough via their voice mail because they would not return her calls. (*Id.* at 84). She believes she may have left as many as 30 messages for them. (*Id.*).

After JCDHR learned of the immersion burn injury to A.D., the children were removed from the Wyatts' home and placed in DHR custody. (Doc. 26–7, McCullough Demo., at 41–42). On this occasion, they were placed in foster care where they remained until they were returned to plaintiff. A.D. required extensive medical care.

## STANDARD OF REVIEW

Rule 56(a), Fed.R.Civ.P., provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Defendants, as the parties seeking summary judgment, bear the initial responsibility of informing the district court of the basis for their motion, and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). A genuine issue of material fact is shown when the nonmoving party produces evidence so that a reasonable fact-finder could return a verdict in its favor. *Greenberg v. BellSouth Telecomms., Inc.,* 498 F.3d 1258, 1263 (11th Cir.2007). If the non-moving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to summary judgment. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552. In reviewing whether the non-moving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in her favor. *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 998–99 (11th Cir.1992) (internal citations and quotations omitted). However, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.,* 419 F.3d 1169, 1181 (11th Cir.2005). A "mere scintilla of evidence" in support of the non-moving party also cannot overcome a motion for summary judgment. *Young v. City of Palm Bay,* 358 F.3d 859, 860 (11th Cir.2004).

## DISCUSSION

The facts, viewed in the light most favorable to the non-moving party—the plaintiff—reflect that Ms. McGhee's three children had been removed from her custody due to unstable housing and had been placed in the custody of a family friend when, in August 2007, the children were removed from that home due to a burn injury suffered by one of the children,

ostensibly due to an accident. At the time of removal, pursuant to Alabama law, a dependency petition was filed with the Family Court of Jefferson County to determine what to do with the children.

Prior to a hearing on that petition, a meeting occurred between Ms. McGhee, JCDHR personnel, a guardian *ad litem* for the children and an attorney appointed to represent Ms. McGhee. At this meeting, a discussion was had to determine whether to place the children into foster care or with another family friend. Ultimately, the Wyatts were put up as prospective custodians for the children. Both Ms. McGhee and defendants deny that they put up the Wyatts as prospective custodians. The testimony reflects that the Wyatts were known to Ms. Young, a friend of Ms. McGhee who attended the meeting. It is not contested that the Wyatts were friends or acquaintances of Ms. Young, who was also a friend of, and attended the same church as, Ms. McGhee. Thus, regardless of how they came to be recommended, the JCDHR was advised that the Wyatts were willing to be custodians of Ms. McGhee's children. Although initially asserting that she wanted Ms. Young to take her children, she later relented and consented to allow them to go to the Wyatts because Ms. Young stated that she had an illness that prevented her from taking them and Ms. McGhee did not want the children to go to foster care after Ms. Wilson informed her that, if the children were in foster care, it would be more difficult for her to get them back.[1]

After the Wyatts were put up as prospective custodians, Ms. McCullough visited their home and interviewed both Wyatts. She also observed their children and questioned them about any possible criminal history. She was advised that they did not have any criminal history. However, JCDHR did not have the legal authority to take fingerprints and run the Wyatts' identities to learn if they had any criminal history. Nonetheless, the Wyatts were run through the State CAN child abuse and neglect database to determine whether they previously had been involved in any cases involving the abuse or neglect of children. That database search was negative.

The Wyatts also put forth Ms. Young as a reference, and she was consulted concerning her knowledge of the Wyatts. She provided no negative information about the Wyatts.

A report regarding the home visit, interviews with the Wyatts and Ms. Young, and the database search were provided to the Family Court judge on August 15, 2007. That report reflected the opinion of JCDHR that the Wyatts would be appropriate custodians. Based on this, the Family Court judge placed custody of the children with the Wyatts, subject to JCDHR making supervisory visits to check on the children every 60 days and making progress reports to the court.

After placement with the Wyatts, JCDHR checked on the children once in September, October, and November 2007. In December 2007, in a follow-up order, the Family Court judge continued custody of the children with the Wyatts but terminated the requirement that JCDHR undertake supervision of the custodians or the children.

---

1. Despite plaintiff's claims to the contrary, the evidence is clear that the Wyatts were *not* foster parents. *See Mitchell v. Davis,* 598 So.2d 801, 805 (Ala.1992) ("Foster parents are selected and approved by DHR. Foster care is temporary and is based upon a con- tract with the State. Foster children can be transferred at any time, and the foster home must be monitored by DHR. Foster parents are paid a supplement for necessities of the foster children."). Consequently, the Wyatts were not employees of the ADHR or JCDHR.

According to McGhee, after the children came into the custody of the Wyatts, she began to notice bruising and welts on the children. Ms. McGhee reported this to JCDHR personnel Wilson and McCullough either in person or by leaving numerous messages in their voice mail box. Ms. McGhee asserts that, based on what she was told by her 11–year–old daughter, no one from JCDHR ever checked out these complaints. Subsequently, in February 2008, A.D. was injured as a result of immersion in scalding water by Mrs. Wyatt. Mrs. Wyatt has been indicted for felony child abuse. There is no evidence that anyone at ADHR or JCDHR was directly involved in any way with the event that resulted in this injury to A.D.

### Liability of State Institutions

As an initial matter, a state is not considered a "person" subject to suit for money damages under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989) ("neither a state nor its officials acting in their official capacities are 'persons' under § 1983"). A suit against a state department "is no different from a suit against the State itself." *Id. See also Greffey v. State of Ala. Dep't of Corrections*, 996 F.Supp. 1368, 1377 (N.D.Ala. 1998) (neither a state nor a governmental entity which is considered an arm of the state qualifies as a "person" under § 1983); *Hayden v. Ala. Dep't of Public Safety*, 506 F.Supp.2d 944, 948–49 (M.D.Ala.2007) (same). Likewise, it is undisputed that the Jefferson County Department of Human Resources is a state agency. *See Ex parte Macon County Dep't of Human Res.*, 716 So.2d 743 (Ala. Civ.App.1998). Accordingly, plaintiff's § 1983 claims against the Alabama Department of Human Resources and the Jefferson County Department of Human Resources are due to be dismissed.

### Qualified Immunity

Defendants Buckner, Rice, McCullough, and Wilson assert that they are entitled to qualified immunity and that the suit against them in their individual capacities is due to be dismissed on this basis. Qualified immunity is "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). The doctrine of qualified immunity is intended to protect government officials performing discretionary functions from the burdens of trial and broad-reaching discovery in cases that are insubstantial or that do not allege violations of clearly established law. *Id.* at 526, 105 S.Ct. at 2815; *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). In particular, qualified immunity avoids "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Harlow*, 457 U.S. at 816, 102 S.Ct. at 2737. *Accord Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815. These important purposes of qualified immunity are thwarted if a case is erroneously permitted to go to trial. *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815.

The applicability of qualified immunity is a question of law to be decided by the court. *Ansley v. Heinrich*, 925 F.2d 1339, 1341, 1345 (11th Cir.1991). To invoke the affirmative defense of qualified immunity, a defendant public official initially bears the burden of proving that he was acting within the scope of discretionary authority when the allegedly wrongful acts occurred. *Rich v. Dollar*, 841 F.2d 1558, 1563 (11th Cir.1988). Once the defendant public official satisfies this burden, the burden then shifts to the plaintiff to show that the actions of the defendant public official, at the time they occurred,

violated clearly established. law. *Id.* at 1564. The defendant public official is entitled to qualified immunity as a matter of law if either (1) the applicable law was not clearly established at the time of the alleged violation, or (2) the plaintiff fails to demonstrate the existence of genuine issues of material fact as to whether the defendant public official's actions violated the clearly-established law. *Mitchell*, 472 U.S. at 526, 105 S.Ct. at 2815; *Rich*, 841 F.2d at 1564.

Thus, when confronted with a government official's invocation of qualified immunity, courts have been instructed by the Supreme Court to first decide the threshold issue—before addressing whether the particular right was "clearly established" at the time it was allegedly violated—of whether the official has deprived the plaintiff of a constitutional right at all. *See Brosseau v. Haugen*, 543 U.S. 194, 197, 125 S.Ct. 596, 598, 160 L.Ed.2d 583 (2004); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001) ("insisting [that courts] turn[ ] to the existence or nonexistence of a constitutional right as the first inquiry"); *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999) ("A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all . . . .' ") (citations omitted); *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5, 118 S.Ct. 1708, 1714, 140 L.Ed.2d 1043 (1998); *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). Courts proceed to the "clearly established" prong of the qualified immunity only "[i]f a constitutional right would have been violated under the plaintiff's version of the facts." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir.2002); *see Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity").

According to plaintiff, these defendants are not entitled to qualified immunity, stating:

A.D. was placed in an unsafe environment as a result of the poor performance in completing the study and evaluation of Marco and NeKeshia Wyatt. It is unreasonable to believe that failure to do a thorough criminal history of individuals where children will reside is lawful. It is clearly established that a child in foster care should be free from unusual punishment and harm. Defendants have failed to properly defend their claims of quali[fied] immunity.

(Doc. 27, Plaintiff's Brief in Opposition to Summary Judgment, at 23). Furthermore, plaintiff alleges that the actions of the employees of JCDHR reflect a deliberate indifference to the welfare of A.D.

Without question, defendants were acting within their discretionary authority by placing A.D. and her siblings in the Wyatts' care and in supervising them after this placement. In *Taylor By and Through Walker v. Ledbetter*, 818 F.2d 791 (11th Cir.1987), the Eleventh Circuit held that a foster child may sue the agency responsible for the child's placement in a foster home under § 1983 for a violation of the child's constitutional rights when the child can demonstrate the state officials "exhibited deliberate indifference to a known injury, a known risk, or a specific duty and their failure to perform the duty or act to ameliorate the risk of injury was a proximate cause of plaintiff's deprivation of rights under the Constitution." *Id.* at 797 (internal citation omitted).

Although A.D. is not a foster child in a foster home, she was, nonetheless, a child whose welfare was placed in the hands of the State and her placement with the

Wyatts was involuntary. In justifying the application of the Fourteenth Amendment to the situation in *Taylor, supra,* the court noted that:

> Children in foster homes, unlike children in public schools, are isolated; no persons outside the home setting are present to witness and report mistreatment. The children are helpless. Without the investigation, supervision, and constant contact required by statute, a child placed in a foster home is at the mercy of the foster parents.

*Id.* at 797.

The reasoning for holding a state agency or its agents responsible for injuries to a foster child by foster parents is equally applicable here. A.D. and her siblings were placed in the Wyatts' care by a court order that required the Jefferson County Department of Human Resources to monitor the selected guardians and the children so placed and report back to the court. Ms. McGhee testified that, during this time, she observed that the children had welts, bruises, fingerprint-like marks on their arms and legs and, on at least one occasion, the appearance of having been hit in the face. Furthermore, she testified that she repeatedly reported this to both Wilson and McCullough, both directly and by leaving numerous telephone messages in their voice mail boxes. Despite this, there is no evidence that this information was investigated or that it was brought to the attention of the Family Court Judge overseeing the case. Consequently, JCDHR's supervision of A.D. was terminated without this information being brought to the attention of that court.

Under the facts of this case, considered in the light most favorable to the plaintiff, plaintiff has established that A.D. had a constitutional right to be free of abuse and serious bodily injury and, at the time of her injury, that right was clearly established. Therefore, qualified immunity is not appropriate with regard to defendants Wilson and McCullough.

However, there is no evidence of any involvement or knowledge on the part of defendants Rice and Buckner. There is no evidence that they failed to perform any duty required of them under any statute or court order. In fact, they were not even employed by ADHR or JCDHR in their current capacities at the time of the events alleged by plaintiff. Consequently, plaintiff has failed to demonstrate the existence of genuine issues of material fact as to whether the actions of Rice or Buckner violated the clearly-established law. As a result, they are entitled to qualified immunity from suit.

Nonetheless, defendants Wilson and McCullough are not subject to this damages suit unless they were deliberately indifferent to A.D.'s right to be reasonably safe. *Taylor,* 818 F.2d at 797. "Only where it is alleged and the proof shows that the state officials were deliberately indifferent to the welfare of the child will liability be imposed." *Id.*

Although mindful of the claims of defendants Wilson and McCullough that Ms. McGhee never advised them of having observed any injuries to her children and their testimony that they monitored the Wyatts and never observed anything inappropriate themselves, the evidence at this stage of the proceedings must be viewed in the light most favorable to the plaintiff as the non-moving party. Furthermore, "deliberate indifference entails something more than mere negligence, ... [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan,* 511 U.S. 825, 835, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994) (to be deliberately indifferent, a state "official must both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and *he must also draw the inference*") (emphasis added). Defendants Wilson and McCullough, then, cannot be liable to plaintiff unless they both knew of and disregarded an excessive risk of abuse to A.D. *Id.*

In order to establish deliberate indifference, plaintiff must be able to allege (and prove at trial) that defendants (1) were objectively aware of a risk of serious harm; (2) recklessly disregarded the risk of harm; and (3) this conduct was more than merely negligent. *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir.1999). As stated by the Eleventh Circuit in *Taylor,* "[a] child abused while in foster care ... [is] faced with the difficult problem of showing *actual knowledge of abuse* or that agency personnel *deliberately failed to learn* what was occurring in the foster home." 818 F.2d at 796 (emphasis added). It is necessary to look at the complaint to see if plaintiff has claimed that defendants had actual knowledge or deliberately failed to learn of the serious risk to A.D. of the sort of injuries she ultimately sustained.

First, plaintiff claims that defendants Wilson and McCullough failed to take various actions that, if taken, would have led to the discovery of adverse information about the Wyatts and their fitness to serve as foster parents. In particular, plaintiff alleges that defendants failed to fingerprint or run criminal history checks on the Wyatts or to perform any background investigation beyond interviewing them and their one reference, Ms. Young. These allegations, however, even if true, which is assumed, do not show that these defendants had actual knowledge of a substantial risk of harm to A.D. In fact, the allegations show that defendants were ignorant of certain risks that the information may have revealed. Nor does plaintiff claim that defendants deliberately failed to gather this information. At most, her claim is

that defendants were negligent or careless in not gathering the information, or that they negligently or carelessly failed to do a reasonably detailed background investigation.

However, plaintiff also alleges that defendants ignored certain adverse information about the Wyatts and their fitness to serve as custodians of her children. According to Ms. McGhee, she made repeated telephone calls to Wilson and McCullough advising them that the Wyatts were hurting her children. She also advised them that, whenever they hurt her children, they would not allow her to visit with them or would simply not show up for visitation. (*See, e.g.,* McGhee Demo. at 60–65). She also called McCullough's supervisor, Ms. Hood, to report this abuse. Ms. Hood advised Ms. McGhee she would take care of it but, according to plaintiff, it got worse. (*Id.* at 65–66). According to plaintiff, when she could not reach Wilson and McCullough on the telephone, she went in person to their office to try to warn them that she believed "something awful" was about to happen. (*Id.* at 86). However, she was unable to get Wilson or McCullough to look into her claims.

McGhee testified that she repeatedly advised Wilson and McCullough that her children were being hurt by the Wyatts and that these injuries were more than simple bruises and abrasions. She alleges that she described bruises, welts, belt marks, fingerprint-like marks on arms and legs, and at least one instance where it appeared that one of her children had been struck in the face. Based on this, there is a question of fact to be resolved regarding whether Wilson and McCullough exhibited deliberate indifference to a known injury, a known risk, or a specific duty and whether their failure to perform the duty or act to ameliorate the risk of injury was a proximate cause of A.D's deprivation of rights

under the Constitution. Consequently, the motion for summary judgment as to defendants Wilson and McCullough is due to be denied.[2]

### CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Motion for Summary Judgment be **GRANTED** as to the Alabama Department of Human Resources, the Jefferson County Department of Human Resources, Nancy Buckner, and Amanda Rice. It is further **RECOMMENDED** that the Motion for Summary Judgment as to defendants Ashley Wilson and Lori McCullough be **DENIED.**

### NOTICE OF RIGHT TO OBJECT

The parties are DIRECTED to file any objections to this Report and Recommendation within a period of fourteen (14) days from the date of entry. Any objections filed must specifically identify the findings in the magistrate judge's recommendation objected to. Frivolous, conclusive, or general objections will not be considered by the district court.

Failure to file written objections to the proposed findings and recommendations of the magistrate judge's report shall bar the party from a *de novo* determination by the district court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. Unit B 1982). *See Stein v. Reynolds Securities, Inc.,* 667 F.2d 33 (11th Cir.1982). *See also Bonner v. Prichard,* 661 F.2d 1206 (11th Cir.1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit

handed down prior to the close of business on September 30, 1981.

DONE this 11th day of March, 2013.

---

**2.** Defendants' claim that they are entitled to "prosecutorial immunity" is without merit. The § 1983 violation is based upon defendants Wilson's and McCullough's failure to perform their statutory and court-ordered

mandate to supervise the Wyatts and the well-being of A.D. and her siblings. There is no prosecutorial element to these duties that would allow the invocation of such a claim of immunity.